**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE, Individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BAYSTATE HEALTH SYSTEM, INC.,<br><br>Defendant. | Case No.: 1:25-cv-10337-JEK |

**BAYSTATE HEALTH, INC.'S SUGGESTIONS IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

SUMMARY OF ALLEGATIONS ........ 2

LEGAL STANDARD ........ 3

ARGUMENT ........ 3

I. All Of Plaintiff's Claims Should Be Dismissed Because She Has Not Alleged That Any Of Her Protected Health Information Was Disclosed. ........ 3

II. The Amended Complaint Fails To State A Claim Under The ECPA. ........ 6

A. Plaintiff Has Not Alleged An Unlawful Interception. ........ 6

B. Plaintiff Has Not Alleged A Criminal Or Tortious Purpose. ........ 6

i. Plaintiff does not plausibly allege *intent* to commit a crime or tort. ........ 7

ii. Plaintiff does not plausibly allege an *independent* crime or tort. ........ 9

C. Plaintiff Has Not Alleged That Baystate Intercepted "Contents." ........ 11

III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Law. ........ 11

IV. Plaintiff Fails To State A Claim For Breach Of Implied Contract. ........ 14

V. Plaintiff Fails to State A Claim For Breach Of Fiduciary Duty. ........ 16

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alves v. BJ's Wholesale Club, Inc*,
2023 WL 4456956 (Mass. Super. June 21, 2023)....................13

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021)....................15

*American Hospital Association v. Becerra*,
738 F. Supp. 3d at 802....................1, 4, 5, 13

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*,
53 F. Supp. 3d 279 (D. Mass. 2014)....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................9, 13

*In re Banner Health Data Breach Litig.*,
2017 WL 6763548 (D. Ariz. Dec. 20, 2017)....................15

*Beauregard v. Meldon*,
2019 WL 6877185 (D. Mass. Dec. 17, 2019)....................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Boddie v. ABC*,
881 F.2d 267 (6th Cir. 1989)....................7

*In re Boston Univ. COVID-19 Refund Litig.*,
511 F. Supp. 3d 20 (D. Mass. 2021)....................13

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015)....................11

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017)....................15

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................7

*Clark v. Zwicker & Assocs., P.C.*,
2024 WL 2025568 (D. Mass. May 7, 2024) ........13

*Doe v. Boston Medical Center Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ........13

*Doe v. Emerson Hospital*,
2023 WL 8869624 (Mass. Super. Nov. 22, 2023) ........13

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........8, 12

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ........5, 13

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ........5

*Doe v. Village Podiatry Grp., LLC*,
2024 WL 5187261 (Ga. Super. Nov. 20, 2024) ........16

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........7

*Goldstein v. Luxottica of Am., Inc.*,
2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ........11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ........7, 9

*Gravallese v. Mass. Parole Bd.*,
1995 WL 808813 (Mass. Super. Apr. 19, 1995) ........15

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. Jul. 1, 2024) ........12

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024) ........5

*Katz v. Pershing, LLC*,
806 F. Supp. 2d 452 (D. Mass. 2011) ........15

*Katz-Lacabe v. Oracle America*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ........8

*Kelley v. CVS Pharm., Inc.*,
2007 WL 2781163 (Mass. Super. Aug. 24, 2007) ........17

*Koppel v. Moses*,
2020 WL 6292871 (D. Mass. Oct. 27, 2020) ........ 12

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003) ........ 16, 17

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ........ 8

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ........ 10

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ........ 8

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005) ........ 14

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 6

*Nienaber v. Overlake Hosp. Med. Ctr. (Nienaber I)*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 10

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) (*Nienaber II*) ........ 5, 9, 10

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ........ 10, 12

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ........ 8, 10, 11

*Reidy v. Umass Mem. Med. Ctr., Inc.*,
2021 WL 6777622 (Mass. Super. June 17, 2021) ........ 16

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
Case No. 3:24-cv-00382 (W.D.N.C. Mar. 20, 2025) ........ 9

*Rodriguez v. FastMed Urgent Care, P.C.*,
2024 WL 3541582 (E.D.N.C. July 24, 2024) ........ 9

*Sea Breeze Estates, LLC v. Jarema*,
94 Mass. App. Ct. 210 (2018) ........ 14

*In re Shields Health Care Group, Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024) ........ 14

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................12

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) ....................13

*Sun West Mortg. Co. v. Flores*,
2016 WL 1030074 (D.P.R. Mar. 10, 2016) ....................8

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................7

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................6, 8, 12

*United States v. Bowen*,
127 F.3d 9 (1st Cir. 1997) ....................10

*United States v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998) ....................7

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ....................7, 10

*Webb v. Injured Workers Pharm., LLC*,
2023 WL 5938606 (D. Mass. Sept. 12, 2023) ....................15

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) ....................15

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .................... *passim*

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021) ....................12, 13

*Wood v. City of Haverhill*,
2024 WL 4189932 (D. Mass. Sept. 13, 2024) ....................6

**Statutes**

Electronic Communications Privacy Act .................... *passim*

FTC Act ....................7, 9

HIPAA .................... *passim*

Massachusetts Right to Privacy Law ....................3, 11, 12

## INTRODUCTION

Throughout the country, including in Massachusetts, numerous plaintiffs have been attempting to collect massive damages awards from non-profit and charitable healthcare providers that use "pixel" technologies on their public websites. When a user visits a website that contains a pixel, limited information about the visit is allegedly sent to the entity that created the pixel—here, Meta and Google—which then uses the data to assist with website functionality and advertising. These technologies are ubiquitous; they are used by countless businesses, healthcare entities, and government agencies to improve the functionality and advertising on their websites.

Baystate Health System, Inc. ("Baystate Health, Inc." or "Baystate") is a non-profit that offers a range of healthcare services in Massachusetts. It operates a public website that is available to patients and non-patients alike. The Plaintiff in this case, Jane Doe, alleges that when she visited Baystate's website, the pixels on that website caused her browser to send "protected health information" (PHI) to Meta and Google.[1] She bases that allegation on the definition of PHI in the Health Insurance Portability and Accountability Act (HIPAA). Plaintiff apparently believes that PHI is disclosed during *every* visit to Baystate's public website, because she describes "Private Information" as including things like webpage views and button clicks, which not only fail to identify an individual (let alone an individual's PHI), but are also inherent in any visit to a public website.

The Amended Complaint suffers from a variety of defects, but two cut across all of Plaintiff's claims. First, it is now well established that information on a healthcare provider's public website does not qualify as PHI under HIPAA. *See, e.g., American Hosp. Ass'n. v. Becerra*,

[1] The Amended Complaint uses the term "Private Health Information" to collectively refer to the terms "protected health information" and "individually identifiable health information (IHII). Am. Compl. ¶ 3. Baystate will refer to these terms collectively as "PHI."

738 F. Supp. 3d 780, 802, 807 (N.D. Tex. 2024) (vacating a 2022 Bulletin issued by the Department of Health and Human Services, and holding that browsing activity on a public website "does not and cannot identify an individual or the individual's PHI"). Second, Plaintiff's Amended Complaint is devoid of basic factual support. Plaintiff does not identify *any* specific PHI she provided to Baystate through its *public* website, let alone what specific information was improperly disclosed to third parties—whether it was medical records, treatment information, or something entirely generic. Simply put, Plaintiff has said nothing of substance about her individual claims. The Court should dismiss the Amended Complaint under Rule 12(b)(6).

## SUMMARY OF ALLEGATIONS

Baystate is a non-profit Massachusetts healthcare system that maintains a public website at www.baystatehealth.org. Am. Compl. ¶ 1. Baystate's website allows visitors to "research doctors and request to schedule appointments with doctors, register for support groups, research health conditions and learn about related services offered by [Baystate], [and] learn about medical procedures offered by [Baystate]." *Id.* ¶ 18. Baystate also offers a private patient portal, which allows patients to log in to a secure network to access their medical information. *Id.* Notably, Plaintiff does not allege that Baystate embedded any "tracking code" within its patient portal. She alleges only that Baystate installed tracking technology (like pixels) on its **public** website, which is accessible by anyone in the world, regardless of their patient status. *Id.* ¶ 29, 1.

The bulk of Plaintiff's Amended Complaint provides a general description of pixel technology along with hypothetical scenarios about how an individual *could* interact with Baystate's website. *Id.* ¶ 62. But when it comes to her *own* interactions with Baystate's website, Plaintiff has very little to say. Specifically, all Plaintiff alleges is that she is a Baystate patient who used the Baystate website "to obtain information related to breast cancer screenings and schedule a mammogram, to log in to the MyBaystate patient portal, and to search for providers." *Id.* ¶ 97.

Plaintiff does not identify what specific information she reviewed or searched for, she does not allege her website usage was connected to any targeted advertisements, nor does she identify which information was transmitted to third parties.

Plaintiff brings four causes of action on behalf of herself and a putative class and/or subclass: (1) violation of the Electronic Communications Privacy Act; (2) violation of the Massachusetts Right to Privacy Law; (3) Breach of Implied Contract; and (4) Breach of Fiduciary Duty. *Id.* ¶¶ 122–73.

## LEGAL STANDARD

A court must dismiss a complaint under Rule 12(b)(6) if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard demands more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

## ARGUMENT

### I. All Of Plaintiff's Claims Should Be Dismissed Because She Has Not Alleged That Any Of Her Protected Health Information Was Disclosed.

Each of Plaintiff's claims is based on a false premise: that when people visit Baystate's public website, their PHI is disclosed to third parties. Am. Compl. ¶¶ 1–3. This categorical assertion—which is not supported by any specific factual allegations—is wrong as a matter of law. Plaintiff bases it in large part on a press release issued by the Federal Trade Commission (FTC) on July 20, 2023, and a Bulletin issued by the U.S. Department of Health and Human Services (HHS) in December 2022. Am. Compl. ¶¶ 89–93. But the entire basis for the press release, and

[2] Unless otherwise noted, all emphases in citations have been added, and internal quotation marks and citations have been removed.

relevant portions of the Bulletin, were struck down in an action against the HHS in the Northern District of Texas.

In *American Hospital Association v. Becerra*, the court explained that mere browsing activity on a public hospital website "*does not* and *cannot* identify an individual or the individual's PHI." 738 F. Supp. 3d at 802. That is because the website operator has no way of knowing why any particular user visits a particular webpage, or clicks a particular button. *See id.* at 795 ("A user's intent in visiting [an unauthenticated public webpage] is unknowable."). For example, a user might visit a healthcare website to find information for a family member, a friend, or for a school research project. *See id.* at 801. Or a user could visit the website to find non-medical information, like whether parking is available at a hospital. *Id.* But whether or not the browsing relates to healthcare, it is not PHI if it takes place on a public website because subjective motive is required to link it to that visitor's healthcare. *See id.* at 801–04 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** [or PHI] (Person A has Condition B).").[3]

Thus, although Plaintiff alleges that she is a patient of Baystate, she does not provide any facts to support the assertion that she searched for information related to *her* PHI on Baystate's website. And even if she had performed such a search, Baystate would have no way of knowing that it was Plaintiff conducting the search or her reason for doing so; it could have been any member of the public. This type of generic browsing data does not reveal PHI.

Although *Becerra* is in the context of HIPAA, its common-sense holding applies more broadly, and undermines each of Plaintiff's claims, as they are all premised on the assertion that

[3] HHS dismissed its appeal in *Am. Hosp. Ass'n v. Becerra*, No. 24-10775 (5th Cir. Sept. 4, 2024).

PHI, or at a minimum some private information, was disclosed via public browsing, which is simply not the case. For these reasons and others, numerous federal courts have granted motions to dismiss claims similar to Plaintiff's after *Becerra. See American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (dismissing complaint because "the disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA") (emphasis in original); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *2–*3 (S.D. Ind. Sept. 24, 2024) (dismissing claims for negligence, invasion of privacy, implied breach of contract, unjust enrichment, and breach of fiduciary duty because "principal theory" underlying all claims was that defendant transmitted PHI inputted into its website but nothing about plaintiff's browsing activity "relate[d] specifically to *her* health or relationship with Upperline.") (emphasis in original); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) ("generic search queries" for burn specialists and burn treatments did not "constitute PHI"); *see, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *5 (W.D. Wash. Mar. 4, 2025) (*Nienaber II*) (even where plaintiff set forth her actual medical conditions, searches about that condition, and particular doctors searched for and obtained to treat condition, her allegations "just barely" passed muster); *but see Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142 (D. Mass. 2024) (pre-*Becerra* decision denying in part a defendant's motion to dismiss a pixel suit (that did not include an ECPA claim), and accepting the plaintiff's definition of PHI without a substantive analysis of HIPAA's provisions).

Because every one of Plaintiff's claims is premised on the alleged disclosure of PHI (*see e.g.*, Am. Compl. ¶¶ 127–31, 135–38, 151–52, 157–63, 169–72), and because her Amended Complaint does not actually allege such a disclosure, her claims should all be dismissed.

## II. The Amended Complaint Fails To State A Claim Under The ECPA.

Plaintiff alleges that Baystate unlawfully "intercepted" her communications with its website in violation of the Electronic Communications Privacy Act (ECPA). Am. Compl. ¶¶ 122–43. To state an ECPA claim, Plaintiff had to allege facts demonstrating that Baystate "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device, and (6) that the communication was intercepted contemporaneously." *Wood v. City of Haverhill*, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024). Plaintiff's ECPA claim should be dismissed because she has not shown any unlawful "interception," or that any "contents" were intercepted.

### A. Plaintiff Has Not Alleged An Unlawful Interception.

The ECPA is a one-party consent statute. The law expressly provides that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a . . . communication where such person is a *party to the communication*." 18 U.S.C. § 2511(2)(d). And it is undisputed that Baystate was a party to Plaintiff's communications with Baystate's website; the communications were sent directly to that website. *See* Am. Compl. ¶¶ 1, 3–4, 110, 126–27; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (affirming dismissal of ECPA claim because defendant was a party to the communications); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (dismissing ECPA claim noting "the weight of persuasive authority in similar pixel tracking cases" supported a finding of no interception where defendant was party to the communication).

### B. Plaintiff Has Not Alleged A Criminal Or Tortious Purpose.

Plaintiff alleges, however, that Baystate is liable under the "crime-tort exception" to the one-party consent rule. Am. Comp. ¶¶ 133–40. This exception applies when a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the

Constitution or laws of the United States." 18 U.S.C. § 2511(2)(d). To invoke the crime-tort exception, Plaintiff must plausibly allege that Baystate (1) had the intent to commit (2) an independent crime or tort, separate from the interception itself. *See Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Plaintiff fails to allege either element here.

**i. Plaintiff does not plausibly allege *intent* to commit a crime or tort.**

To prove the requisite intent "[Plaintiff] must establish that either the primary motivation or a determinative factor in" Baystate's decision to use tracking technology "was the intent to commit a criminal or tortious act." *United States v. McHugh*, 57 F. Supp. 3d 95, 99–100 (D. Mass. 2014). "[I]t is the *use* of the interception with *intent to harm* rather than the fact of interception that is critical to liability." *Boddie v. ABC*, 881 F.2d 267, 270 (6th Cir. 1989). The mere allegation that an interception resulted in a criminal or tortious act does not suffice. *Caro*, 618 F.3d at 100. "Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. ABC*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (holding crime-tort exception did not apply to similar technology).

Plaintiff makes boilerplate allegations that Baystate intercepted her communications "for the purpose of committing a . . . violation of HIPAA and the FTC Act, as well as the other causes of action set forth in this Complaint." Am. Compl. ¶ 134. She offers no support for this claim. Even if Baystate's conduct violated one of these laws (which it did not), Plaintiff has not alleged that Baystate had an unlawful *purpose* beyond what was accomplished by the collection of her data—and that is what matters under the crime-tort exception. *See United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting plaintiff's "superficial logic" that "because the recording itself was made in violation of state law, it was made for the purpose of violating state law"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[T]he

commission of a tortious act [does] not prove a tortious purpose."); *see id.* at 518 (finding "plaintiffs clearly allege that DoubleClick has committed a number of torts" but "nowhere have they alleged that DoubleClick's primary motivation or a determining factor in its actions has been to injure plaintiffs tortiously"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) ("Because the complaint does not allege that defendants intercepted a communication for the purpose of committing any criminal or tortious act, it fails to state a claim").

Plaintiff's apparent theory—that Baystate, a non-profit hospital, collected her basic browsing data for the *purpose of harming her*—is implausible on its face. In fact, it is contradicted by other parts of her own Amended Complaint, which say that Baystate used the pixel technology for "enhanced online advertising," for "analytic purposes," and for "financial gain." Am. Compl. ¶¶ 85, 139. As many courts have recognized (including in pixel cases), there is nothing unlawful about these objectives. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (purpose in collecting information for marketing was "solely for the benefit of [the hospital] in better reaching and serving its patients," not to commit a tort); *TMC Health*, 2024 WL 4364150, at *4 (rejecting crime tort-exception where complaint alleged healthcare system used technology to increase profits and improve website analytics); *Katz-Lacabe v. Oracle America*, 2023 WL 2838118, at *16 (N.D. Cal. Apr. 6, 2023) ("Defendant's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money."); *Piedmont*, 2024 WL 3972984, at *4 (joining "the weight of persuasive authority" in pixel litigation); *Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 939 (N.D. Ill. 2023) (dismissing ECPA claim in pixel case and distinguishing the First Circuit's decision in *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003), because it did not consider the party exception and involved a defendant that "interecept[ed] a communication between a user and a *third-party* website"); *Sun West Mortg.*

*Co. v. Flores*, 2016 WL 1030074, at *5 (D.P.R. Mar. 10, 2016) (allegations that defendant "intends to benefit economically from the confidential information he intercepted" were insufficient); *Rodriguez v. FastMed Urgent Care, P.C.*, 2024 WL 3541582, at *6 (E.D.N.C. July 24, 2024) (alleging defendant intercepted communications "for commercial use or gain" does not equate to intercepting "for the purpose of committing any criminal or tortious act."); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (dismissing ECPA claim because "Plaintiffs do not allege that [commercial advantage] constitutes independently illegal or actionable conduct" sufficient to apply exception); *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, Case No. 3:24-cv-00382, p. 6 (W.D.N.C. Mar. 20, 2025) (rejecting crime-tort exception in healthcare pixel action because "Plaintiffs have not plausibly alleged that Defendant's purpose for sharing IIHI was to breach HIPAA").

**ii. Plaintiff does not plausibly allege an *independent* crime or tort.**

Nor does Plaintiff identify any *independent* "tortious conduct" beyond "the alleged wiretapping itself" that would violate HIPAA, the FTC Act, or Plaintiff's common law theories. As numerous courts have held, in similar cases related to a healthcare provider's use of tracking technology, the crime-tort exception is not triggered when the tortious conduct "is the alleged wiretapping itself." *Google Cookie*, 806 F.3d at 145; *see also TMC Health*, 2024 WL 4364150, at *3 ("[The] criminal or tortious purpose must be separate and independent from the act of the recording."). Put differently, the interception alleged to be an ECPA violation cannot also be the same act that underlies the alleged crime or tort.

Where, as here, the alleged interception and disclosure of communications to a third party are accomplished through the same act, the disclosure does not constitute an independent crime or tort. Just weeks ago, a federal court in Washington dismissed an ECPA claim in a similar healthcare pixel lawsuit on this basis. *See Nienaber II*, 2025 WL 692097, at *13. There, the court

addressed the plaintiff's amended ECPA claim, and concluded the "amended pleadings still allege that the technologies installed by Defendant contemporaneously transmit Plaintiff's communications to third parties," which demonstrated that "the alleged tortious or criminal use of the acquired communications is the disclosure itself." *Id.* As a result, the court found that the crime-tort exception did not apply. The court also went a step further—noting the decisions cited by plaintiff that applied the crime-tort exception in similar cases were unpersuasive because they did not grapple with the statutory text or evaluate the "distinction between the interception and the transmission of data." *Id.*; *see also Nienaber v. Overlake Hosp. Med. Ctr. (Nienaber I)*, 733 F. Supp. 3d 1072, 1095–96 (W.D. Wash. 2024); *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (the crime-tort exception does not apply "because neither the alleged HIPAA nor privacy violations were independent of the interception"). The decision in *Nienaber II* applies equally here. Plaintiff alleges contemporaneous interception and transmission (Am. Compl. ¶ 46), which means the "alleged tortious or criminal use of the acquired communications is the disclosure itself." *Nienaber II*, 2025 WL 692097, at *13. As a result, she has failed to invoke the crime-tort exception, and her ECPA claim fails as a matter of law.

Moreover, the First Circuit has made clear that courts should construe the crime-tort exception "narrowly." *McHugh*, 57 F. Supp. 3d at 100; *In re Pharmatrak, Inc.*, 329 F.3d at 23 ("As used in [ECPA], the term 'intentional' is narrower than the dictionary definition of 'intentional.'"). Additionally, because the ECPA imposes criminal penalties, the rule of lenity applies—so any ambiguities in the statute must be resolved in Baystate's favor. *See United States v. Bowen*, 127 F.3d 9, 13–14 (1st Cir. 1997) ("[T]he rule of lenity means that 'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'"); *Leocal v.*

*Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (explaining rule of lenity also pertains to civil claims arising out of statutes with criminal applications). For further discussion on the application of the rule of lenity, Baystate directs the Court to the amicus brief filed by The Chamber of Commerce of the United States of America, recently filed in a similar healthcare pixel case, attached as Exhibit A.

**C. Plaintiff Has Not Alleged That Baystate Intercepted "Contents."**

Plaintiff's ECPA claim fails for another reason: she does not allege that Baystate intercepted the "contents" of any communication. 18 U.S.C. § 2510(4). "Contents" is defined as information "concerning the substance, purport, or meaning of th[e] communication," including "personally identifiable information such as a party's name, date of birth, and medical condition." *Id.* § 2510(8); *see also In re Pharmatrak*, 329 F.3d at 18. Plaintiff does not claim that Baystate received any such information from *her*. At most, Plaintiff alleges that Baystate *could potentially* receive information regarding webpage views, search terms, and form information. Am. Compl. ¶ 126. But "search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff" are "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the [ECPA]" because they do "not convey the substance or meaning of any message." *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) (quoting *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021)). And regardless, Plaintiff does not meaningfully *describe* the particular information that she shared with Baystate. Her ECPA claim should be dismissed.

**III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Law.**

Plaintiff alleges that Baystate violated the Massachusetts Right to Privacy Act, G.L. c. 214 § 1B, by disclosing her PHI to third parties without her consent and that such disclosure constituted an invasion of her privacy. Am. Compl. ¶¶ 151–52. Under this statute, a plaintiff may pursue a claim based upon a theory of public disclosure of private facts or intrusion upon seclusion, but for

either theory must prove the facts gathered or disseminated were of a "highly personal or intimate" nature and that the invasion resulted in *both* an "unreasonable" *and* "substantial or serious interference" with plaintiff's privacy. *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015); *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021). Plaintiff fails to allege either of the two elements of this claim.

First, Plaintiff has not alleged that Baystate gathered or disseminated any "highly personal or intimate" facts, nor that the alleged invasion was unreasonable and substantial and serious. Again, her Amended Complaint does not identify any specific information that she provided to Baystate or that Baystate collected *about her*. *See* § I, *supra*. But even Plaintiff's generalized allegations do not plausibly suggest that Baystate disclosed *anyone's* sensitive information to Facebook or Google. Plaintiff's allegations only relate to the Baystate website—not the patient portal. And no one has a reasonable expectation of privacy in information "entered" on a public website. "Contemporary internet browsing involves the collection of users' data, *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) (emphasis in original) (collecting cases); *see also Okash*, 2024 WL 1285779, at *7 & n.9 (collecting cases and noting "[c]ourts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta"); *Koppel v. Moses*, 2020 WL 6292871, at *8–*9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (dismissing invasion of privacy claim because "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA and similar statutes]"). Courts addressing similar claims have not hesitated to dismiss such deficient allegations. *See*

*Kaiser Found. Health Plan*, 2024 WL 1589982, at *4; *Piedmont*, 2024 WL 3972984, at *2; *TMC Health*, 2024 WL 4364150, at *4.[4]

Plaintiff has also failed to allege an invasion of privacy that was "both unreasonable and substantial or serious." *Wofse*, 523 F. Supp. 3d at 137. In assessing this factor, courts "balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *Clark v. Zwicker & Assocs., P.C.*, 2024 WL 2025568, at *7 (D. Mass. May 7, 2024). Even if Plaintiff had a reasonable expectation of privacy in her routine browsing activities, she does not claim that Baystate *used* her information for an improper purpose. Instead, she alleges that Baystate used the information for "marketing and/or analytics." Am. Compl. ¶¶ 85, 106, 162, 163(b). There is nothing invidious about those plainly legitimate business purposes. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (explaining alleged invasion of privacy is not unreasonable, serious, or substantial "if, among other things, it had a legitimate business purpose") (quoting *Ortiz v. Examworks, Inc.*, 26 N.E.3d 165, 173 (Mass. 2015)); *see also Eisenhower*, 721 F. Supp. 3d at 1067 (dismissing privacy claims based on the disclosure of "routine medical searches and inquiries" because the disclosure was not "highly offensive"). Her privacy claim should be dismissed.

[4] Baystate acknowledges that this Court and a handful of Massachusetts Superior court decisions have declined to dismiss claims for violation of the Massachusetts Right to Privacy Law, negligence, breach of implied contract, and unjust enrichment. *See Tenet Healthcare Corp.*, 731 F. Supp. 3d 142; *Doe v. Emerson Hospital*, 2023 WL 8869624 (Mass. Super. Nov. 22, 2023); *Doe v. Boston Medical Center Corp.*, 2023 WL 7105628, (Mass. Super. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc*, 2023 WL 4456956 (Mass. Super. June 21, 2023). As discussed above, these decisions pre-dated *Becerra*, as well as much of case law in this developing area of law, and therefore lack the benefit of the most recent contextualization for these types of claims. Further, as to the state court decisions, Baystate respectfully submits that discussion of the issues in those rulings is perfunctory, turns on specific allegations in each case, and that the more thorough decisions from other federal district courts finding allegations similar to Plaintiff's insufficient to state a claim are more persuasive.

## IV. Plaintiff Fails To State A Claim For Breach Of Implied Contract.

To state a claim for breach of contract a plaintiff must allege the existence of a valid contract between the parties, plaintiff's willingness to perform, breach of the contract, and damages as a result. *See In re Boston Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 (D. Mass. 2021). To establish the existence of a contract there must be an offer, acceptance, consideration, and a manifestation of mutual assent. *See Sea Breeze Estates, LLC v. Jarema*, 94 Mass. App. Ct. 210, 217 (2018). Plaintiff's breach of implied contract claim fails for two main reasons.

First, there was no mutual assent. To create an enforceable contract, "there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Beauregard v. Meldon*, 2019 WL 6877185, at *3 (D. Mass. Dec. 17, 2019); *see also*. *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (affirming dismissal of express and implied contract claims for "failure to reach agreement on the basic terms of the contract"). Plaintiff alleges that she was required to provide her PHI "to obtain medical care and information from Defendant through the Baystate Website." Am. Compl. ¶¶ 156–58. Every part of that assertion is wrong or misleading. Baystate's public website does not provide medical care. Plaintiff *voluntarily* interacted with Baystate's public website, and use of the website is not a prerequisite requirement of (nor a substitute method of) receiving medical care. Indeed, there is no method on the public website for a user to provide their name, email address, phone number, or appointment information—none of which is PHI to begin with. *See* Part I *supra*.

But regardless of what Plaintiff believed, there is no support for the proposition that *Baystate* agreed to "protect" Plaintiff's public website browsing data. To the extent Plaintiff attempts to allege an explicit contract based on Baystate's privacy policy, she does not claim any

reliance on that agreement, or that Baystate agreed to keep public browsing information private. *See In re Shields Health Care Group, Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 162 (D. Mass. 2024) (dismissing express contract claim for this reason); Am. Compl. ¶ 2. Moreover, Plaintiff provides no factual allegations suggesting that Baystate manifested assent to safeguard browsing information. *See Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (dismissing implied contract claim because neither "party ever discussed the manner of safeguarding [] PII or PHI or that plaintiff had a particular concern about disclosing that information"). Again, even if Plaintiff and Baystate had an agreement about the provision of medical services, this does not give rise to an agreement that Baystate would protect her public browsing data, and Plaintiff's subjective belief to the contrary is insufficient as a matter of law. *See Webb v. Injured Workers Pharm., LLC*, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (dismissing implied contract claim where "plaintiffs had a good faith belief that their PII would be protected" but failed to allege defendant "agreed—explicitly or implicitly—to provide such protection").

Second, there was no consideration. A "promise to perform a pre-existing duty is not valid consideration." *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011) (citing *Gravallese v. Mass. Parole Bd.*, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995)). If Plaintiff's browsing information *did* qualify as PHI (*but see* Part I *supra*), Baystate would have a preexisting legal obligation under HIPAA to protect that information. *See Gravallese v. Massachusetts Parole Bd.*, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995) (a promise to perform a pre-existing duty is not valid consideration); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) ("Because the Defendants are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff or any other patient,

these provisions cannot create contractual obligations."); *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (same) (citations omitted); *TMC Health*, 2024 WL 4364150, at *8 (same); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *19 (D.N.J. Dec. 16, 2021) (same).

Third, Plaintiff has not alleged that she suffered a cognizable harm as a result of Baystate's alleged conduct. Plaintiff vaguely claims that her "sensitive and confidential information" is no longer private (Am. Compl. ¶ 163), but as discussed above, the Amended Complaint provides no factual support for this allegation. It does not say (1) what, if any, specific information Plaintiff disclosed to Baystate, or (2) that any such information was disclosed to a third party. *Reidy v. Umass Mem. Med. Ctr., Inc.*, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021) (plaintiff's claims were "at best, abstract concerns about possible future impairments of his rights as a patient, without actual damages, and, as such, are insufficient to state his claims"); *Doe v. Village Podiatry Grp., LLC*, 2024 WL 5187261, at *2 (Ga. Super. Nov. 20, 2024) (dismissing pixel claims because plaintiff "only offers speculative or theoretical injuries rather than actual losses or injuries to sustain any of his claims for damages"). Plaintiff's breach of implied contract claim should be dismissed.

## V. Plaintiff Fails to State A Claim For Breach Of Fiduciary Duty.

To establish a claim for breach of fiduciary duty, "a plaintiff must show (1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties; (2) breach of that duty; and (3) a causal connection between that breach and some resulting harm to the plaintiff." *Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014). Plaintiff has not satisfied any of these elements.

Plaintiff claims that Baystate owed a duty to her because Baystate is a healthcare provider, and she is a Baystate patient. *See* Am. Compl. ¶¶ 166–67. But even assuming that is true, "the

existence of a fiduciary relationship does not mean that all interaction between the parties to that relationship is measured by the standards applicable to fiduciaries." *Korper v. Weinstein*, 783 N.E.2d 877, 881 (Mass. App. Ct. 2003). The fiduciary duty applies "only as to matters within the scope of the fiduciary relationship." *Id.*; *see also* Restatement (Second) of Torts § 874 cmt. a (1979) (fiduciary relationship covers "matters within the scope of the relation"). And Massachusetts courts have expressly "declin[ed] . . . to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment." *Korper*, 783 N.E.2d at 881 n.11.

When Plaintiff browsed Baystate's public website—which is available to any person with access to the internet, regardless of patient status—she did so "beyond the context of medical treatment" and therefore outside the scope of any physician-patient relationship. *Id.*; *see also Kelley v. CVS Pharm., Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Aug. 24, 2007). Browsing a public website is not "medical treatment," and Baystate did not owe a fiduciary to every person who used its public website. As discussed above, Baystate does not even have a way of knowing whether a website visitor *is* a patient. Baystate could not have breached a fiduciary duty that it was not aware of. Courts in this district have held similar disclosures are insufficient to support a breach of fiduciary duty. *Kelley*, 2007 WL 2781163, at *6 (although disclosure of information suggested plaintiff was a customer of pharmacy "and therefore had been prescribed some medication by some physician at some point in time" that information was not "so private, standing alone, as to constitute a breach" of fiduciary duty).

Moreover, Plaintiff's claim also fails on the independent basis that her alleged damages fail as a matter of law as discussed above in § IV.

## **CONCLUSION**

This Court should dismiss the Amended Complaint under Rule 12(b)(6).

Date: March 21, 2025

Respectfully submitted,

*/s/ Lisa Oliver White*
Lisa Oliver White, BBO# 666841
Shook, Hardy & Bacon L.L.P.
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
Aubrey L. Kramer (*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

*Counsel for Defendant*

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned certifies that pursuant to Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff by email on March 19 and 20, 2025 concerning this motion, and have not been able to narrow the issues in dispute.

*/s/ Lisa Oliver White*
Lisa Oliver White

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2025, the foregoing was served via electronic mail to all parties of record:

Jonathan Shapiro (BBO No. 454220)
Shapiro & Teitelbaum LLP
55 Union Street, 4th Floor
Boston, MA 02108
Tel.: (617) 742-5800
jshapiro@jsmtlegal.com

Sherrie R. Savett
Lane L. Vines
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
ssavett@bm.net
lvines@bm.net

Sophia M. Rios
BERGER MONTAGUE PC
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel.: (619) 489-0300
srios@bm.net

*/s/ Lisa Oliver White*
Lisa Oliver White