## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JANE DOE, individually and on behalf of all
others similarly situated,

       Plaintiff,

  v.


BAYSTATE HEALTH SYSTEM INC.,

       Defendant.

Civil Action No. 1:25-cv-10337-JEK

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS ........................................................... 1

ARGUMENT ............................................................................................................... 4

I.      Plaintiff Alleges Her PHI Was Disclosed. ........................................................... 5

II.     Plaintiff Adequately Pleads a Violation of the ECPA. ........................................ 7

        A.      The ECPA's Crime-Tort Exception Is Applicable. ................................. 8

                1.      Plaintiff Alleges Intentional Conduct. ......................................... 8

                2.      Plaintiff Alleges an Independent Purpose. ................................. 11

        B.      The Material Disclosed by Baystate Constitutes "Contents" under ECPA. ......... 13

III.    Plaintiff Adequately Pleads a Violation of Massachusetts' Right to Privacy.................. 15

IV.     Plaintiff Adequately Pleads a Claim for Breach of Implied Contract. ............................ 17

V.      Plaintiff Adequately Pleads a Claim for Breach of Fiduciary Duty. ............................... 19

CONCLUSION............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*A.D. v. Aspen Dental Mgmt., Inc.*,
  No. 24-cv-1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ...................................... 5, 8, 9, 11

*A.J. v. LMND Med. Group Inc.*,
  No. 23-cv-03288, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ............................................ 19

*Alberts v. Devine*,
  479 N.E.2d 113 (Mass. 1985) ................................................................................................. 19

*Alves v. BJ's Wholesale Club, Inc.*,
  No. 22-cv-2509-BLS1, 2023 WL 4456956 (Mass. Super. June 21, 2023)............................... 17

*Am. Hosp. Ass'n v. Becerra*,
  738 F. Supp. 3d 780 (N.D. Tex. 2024) ...................................................................... 6, 7, 16, 17

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*,
  53 F. Supp. 3d 279 (D. Mass. 2014) ........................................................................................ 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................... 4

*Ayash v. Dana-Farber Cancer Inst.*,
  822 N.E.2d 667 (Mass. 2005) .................................................................................................. 15

*B.K. v. Eisenhower Med. Ctr.*,
  721 F. Supp. 3d 1056 (C.D. Cal. 2024) ................................................................................... 12

*B.K. v. Eisenhower Med. Ctr.*,
  No. 23-cv-2092, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ............................................... 12

*Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*,
  81 N.E.3d 782 (Mass. App. 2017) ........................................................................................... 20

*Beauregard v. Meldon*,
  No. 19-cv-10342, 2019 WL 6877185 (D. Mass. Dec. 17, 2019)............................................. 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................... 4

*Branyan v. Sw. Airlines Co.*,
  105 F. Supp. 3d 120 (D. Mass. 2015) ...................................................................................... 17

*Caro v. Weintraub*,
  618 F.3d 94 (2d Cir. 2010).................................................................................................. 12

ii

*Clark v. Zwicker & Assocs., P.C.*,
   No. 22-cv-10931, 2024 WL 2025568 (D. Mass. May 7, 2024)................................. 17

*Cooper v. Mount Sinai Health Sys., Inc.*,
   742 F. Supp. 3d 369 (S.D.N.Y. 2024)......................................................... 6, 7, 9, 10

*Cortés-Ramos v. Martin-Morales*,
   956 F.3d 36 (1st Cir. 2020)......................................................................... 4

*Cousin v. Sharp Healthcare*,
   702 F. Supp. 3d 967 (S.D. Cal. 2023)................................................................ 6, 14

*Cure v. Factory Mut. Ins. Co.*,
   No. 23-cv-12399, 2025 WL 360622 (D. Mass. Jan. 31, 2025).................................. 4, 14

*D.S. v. Tallahassee Mem'l HealthCare*,
   No. 23-cv-540, 2024 WL 2318621 (N.D. Fla. May 22, 2024) ................................. 10

*Doe v. Bayhealth Med. Ctr. Inc.*,
   No. N24C-09-002 FJJ, 2025 WL 1010403 (Del. Super. Apr. 4, 2025)........................ 6, 16, 18

*Doe v. Boston Med. Ctr. Corp.*,
   No. 2384-cv-00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023)...................... 16

*Doe v. Emerson Hospital*,
   No. 2277-cv-01000, 2023 WL 8869624 (Mass. Super. Nov, 22. 2023)...................... 16, 18, 19

*Doe v. Regents of Univ. of California*,
   672 F. Supp. 3d 813 (N.D. Cal. 2023) ....................................................... 18

*Doe v. Tenet Healthcare Corp.*,
   731 F. Supp. 3d 142 ....................................................................... 16, 18, 19

*DS Advanced Tech. v. Ledvance LLC*,
   No. 24-cv-11155, 2025 WL 959259 (D. Mass. Mar. 31, 2025) ......................... 4, 20

*Gay v. Garnet Health*,
   No. 23-cv-06950, 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ......................... 10

*Gershzon v. Meta Platforms, Inc.*,
   No. 23-cv-00083, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ......................... 14

*Goldstein v. Luxottica of Am., Inc.*,
   No. 21-cv-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ......................... 15

*Gravallese v. Massachusetts Parole Bd.*,
   No. CA 945777, 1995 WL 808813 (Mass. Super. Apr. 19, 1995) ......................... 18

*Harris as next friend of RNH v. Adams*,
   No. 24-cv-12437, 2024 WL 4843837 (D. Mass. Nov. 20, 2024) ............................................. 13

*Hubbard v. Google LLC*,
   No. 19-cv-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ............................................... 17

*In re Boston Univ. COVID-19 Refund Litig.*,
   511 F. Supp. 3d 20 (D. Mass. 2021) ...................................................................................... 19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015).................................................................................................... 12

*In re Google RTB Consumer Priv. Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022) .................................................................................... 14

*In re Grp. Health Plan Litig.*,
   709 F. Supp. 3d 707 (D. Minn. 2023) ........................................................................... 9, 10, 12

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................... 6, 14

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003)................................................................................................... 7, 14

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
   721 F. Supp. 3d 152 (D. Mass. 2024) ..................................................................................... 19

*J.C. v. Cath. Health Sys. Inc.*,
   No. 23-cv-00796, 2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ............................................ 7

*Jacome v. Spirit Airlines Inc.*,
   No. 2021-cv-000947-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)............................. 15

*Jarrell v. Adena Health Sys.*,
   No. 24-cv-00282, 2025 WL 81305 (S.D. Ohio Jan. 13, 2025).................................................. 6

*Kane v. Univ. of Rochester*,
   No. 23-cv-6027, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ............................................. 9

*Katz v. Pershing, LLC*,
   806 F. Supp. 2d 452 (D. Mass. 2011) ..................................................................................... 18

*Kelley v. CVS Pharm., Inc.*,
   No. 98-cv-0897-BLS2, 2007 WL 2781163 (Mass. Super. Aug. 24, 2007) ............................. 20

*Koppel v. Moses*,
   No. 20-cv-11479-LTS, 2020 WL 6292871 (D. Mass. Oct. 27, 2020)...................................... 17

*Korper v. Weinstein*,
    783 N.E.2d 877 (Mass. App. 2003) ........................................................................ 20

*Kurowski v. Rush Sys. for Health*,
    No. 22-cv-5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ...................................... 9, 10, 12

*Lawson v. FMR LLC*,
    670 F.3d 61 (1st Cir. 2012) ................................................................................. 13

*Lugo v. Inova Health Care Servs.*,
    No. 24-cv-700, 2025 WL 905191 (E.D. Va. Mar. 25, 2025) ...................................... 9, 10, 11

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    412 F.3d 215 (1st Cir. 2005) ................................................................................. 19

*McAdams v. Mass. Mut. Life Ins. Co.*,
    391 F.3d 287 (1st Cir. 2004) ................................................................................. 20

*Mekhail v. N. Mem'l Health Care*,
    726 F. Supp. 3d 916 (D. Minn. 2024) ...................................................................... 11

*Muscarello v. U.S.*,
    524 U.S. 125 (1998) ........................................................................................... 13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
    733 F. Supp. 3d 1072 (W.D. Wash. 2024) ................................................................ 12

*Nienaber v. Overlake Hosp. Med. Ctr.*,
    No. 23-cv-01159, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) .................................. 6, 7, 12

*Okash v. Essentia Health*,
    No. 23-cv-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ...................................... 17

*Pena v. GameStop, Inc.*,
    670 F. Supp. 3d 1112 (S.D. Cal. 2023) .................................................................... 12

*Polay v. McMahon*,
    10 N.E.3d 1122 (Mass. 2014) ............................................................................... 15

*Promptu Sys. Corp. v. Comcast Cable Commc'ns, LLC*,
    92 F.4th 1384 (Fed. Cir. 2024) ............................................................................. 13

*R.S. v. Prime Healthcare Servs., Inc.*,
    No. 24-cv-00330, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ...................................... 9

*Reidy v. Umass Memorial Medical Center, Inc.*,
    No. 2085-cv-01101, 2021 WL 6777622 (Mass. Super. June 17, 2021) ............................ 18

*Salamon v. Terra*,
    477 N.E.2d 1029 (Mass. 1985) ........................................................................................ 18

*Sea Breeze Estates, LLC v. Jarema*,
    113 N.E.3d 355 (Mass. App. 2018) ................................................................................. 19

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ........................................................................................ 17

*Soto-Hernandez v. Holder*,
    729 F.3d 1 (1st Cir. 2013) ............................................................................................... 13

*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020) ............................................................................................. 17

*Sussman v. Am. Broad. Companies, Inc.*,
    186 F.3d 1200 (9th Cir. 1999) ........................................................................................ 12

*Szawlowski v. Price*,
    240 N.E.3d 799 (Mass. App. 2024) ................................................................................ 20

*T.F. v. B.L.*,
    813 N.E.2d 1244 (Mass. 2004) ................................................................................. 17, 18

*United States v. Easy Healthcare Corp.*,
    No. 1:23-cv-3107, 2023 WL 4247984 (FTC June 22, 2023) ......................................... 12

*United States v. Foley*,
    No. CR 11-10406, 2015 WL 7194519 (D. Mass. Nov. 16, 2015) .................................. 12

*United States v. Toth*,
    No. 15-cv-13367, 2020 WL 5549111 (D. Mass. Sept. 16, 2020) ................................... 13

*W.W. v. Orlando Health, Inc.*,
    No. 24-cv-1068, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ....................................... 10

*Webb v. Injured Workers Pharmacy, LLC*,
    No. 22-cv-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023) ................................... 19

*Weekes v. Cohen Cleary P.C.*,
    723 F. Supp. 3d 97 (D. Mass. 2024) ............................................................................... 19

*Weld v. CVS Pharm., Inc.*,
    No. 98-cv-0897F, 1999 WL 494114 (Mass. Super. June 29, 1999) ................................ 20

*Williams v. TMC Health*,
    No. 23-cv-00434, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .................................... 12

*Wofse v. Horn*,
  523 F. Supp. 3d 122 (D. Mass. 2021) ................................................................. 17

*Yaghoobi v. Tufts Med. Ctr., Inc.*,
  No. 23-cv-12464, 2025 WL 81591 (D. Mass. Jan. 13, 2025) ................................... 13

**Statutes and Regulations**

15 U.S.C. § 53(b) ......................................................................................... 12

15 U.S.C. § 56(a)(1) ...................................................................................... 12

15 U.S.C. § 57(b) ......................................................................................... 12

18 U.S.C. § 2510 ....................................................................................... 4, 14

42 U.S.C. § 1320d-6 ........................................................................................ 9

45 C.F.R. § 160.103 ........................................................................................ 5

Mass. G.L. c 214 § 1B ......................................................................... 4, 8, 15, 16

**Court Rules**

Fed. R. Civ. P. 15(a) ...................................................................................... 20

LR 7.1(b)(4) .............................................................................................. 13

Plaintiff Jane Doe ("Plaintiff"), individually and on behalf of the alleged Class, respectfully submits this memorandum of law in opposition to the Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 25) filed by Baystate Health System, Inc. ("Baystate" or "Defendant").[1]

## INTRODUCTION

The claims at issue boil down to a betrayal of privacy for commercial gain. Plaintiff, like other Baystate patients, trusted that her personal health information would be protected by her healthcare provider. Baystate was not only legally obligated to do so, but expressly assured patients that it would keep those confidences. Despite these promises and obligations, Baystate chose to install hidden computer code on its Website that acted as a wiretap to surreptitiously transfer health and personal identifying information about its patients to Facebook and Google, thereby monetizing patient data for Baystate's own benefit. When such conduct was publicly exposed, Baystate removed the secret code. Faced with a lawsuit for redress, Defendant's excuse that everyone was doing it is not a legal justification, nor does its premature *truth defense* warrant dismissal at the pleading stage. Plaintiff's claims are well-pleaded and sufficient to sustain her claims at this stage. For the reasons below, Defendant's motion to dismiss must be denied.

## SUMMARY OF FACTUAL ALLEGATIONS

The Complaint details how Baystate installed a "pixel" and other tracking technology on its Website that intercepts and discloses confidential patient information. Plaintiff's allegations show that Baystate discloses, among other things: (a) the specific doctor pages patients review along with the reasons why the patient or user is interested in the doctor (¶¶ 63-68); (b) a patient's request to book an appointment with a specific doctor (¶¶ 69-71); (c) the names of support groups that patients register for (*e.g.*, groups for weight loss surgery, cancer support, and grief support)

---

[1] Citations to Plaintiff's Amended Complaint (Dkt. 12) ("Complaint") are referenced as "¶ __."

(¶¶ 72-75); (d) the text of searches patients type into search bars (¶¶ 76-77); and (e) when a patient requests to log in to the patient portal to receive virtual care, send and receive messages from doctors, request prescription refills, schedule appointments, and pay bills (¶¶ 78-80). Much of this information, including the fact that a person is a patient of a medical provider and information relating to past, present, or potential physical or mental health or condition of an individual, is protected health information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which requires healthcare providers to protect and keep such information confidential. ¶¶ 13-14, 70, 73. As alleged, the code installed by Baystate on its Website (¶¶ 31, 52 (images)) purposefully causes patients' communications to be recorded in text, as viewable on the patient's device, before the text is sent to Google or Meta. ¶¶ 45, 46, 60, 61, 84, 126. Although Baystate had options to protect patient identities, it did not do so. ¶ 55.

Plaintiff, a Massachusetts resident and Baystate patient (¶¶ 8, 96), used the Baystate Website to access Baystate's healthcare services. Plaintiff communicated on the Website to, among other things, obtain healthcare information related to breast cancer screenings, search for specific healthcare providers, schedule a mammogram, and log in to the MyBaystate patient portal. ¶ 96. Plaintiff is a Facebook user. ¶ 99. Using available Facebook privacy tools, Plaintiff confirmed that the code Baystate installed on the Website disclosed approximately *80 communications* between Plaintiff and the Website to Facebook from November 19, 2021 to April 10, 2023. *Id.* Baystate also disclosed Plaintiff's confidential communications to Google. ¶ 98. Sensitive information regarding Plaintiff's medical care was disclosed to those third parties with her personally identifying information such as IP address, Facebook ID, and other identifiers. ¶¶ 30-36, 103. A Facebook ID is an address for a person's Facebook profile and is directly linked to their *first and last name, birthday, gender, and Facebook profile/photo*.

Patients such as Plaintiff have objectively reasonable expectations of privacy in communications with the Baystate Website based on Baystate's legal obligations to maintain the confidentiality of wire communications and communications with patients, state and federal laws protecting the confidentiality of patient communications and medical information, as well as Baystate's own representations and promises. ¶ 95. Baystate made several express promises to maintain the confidentiality of patient information and communications and to use that information "*only for your customer/patient relationship with Baystate Health*," and stated it would "*not disclose your personal information unless the following conditions are met: You provide to us a specific written consent, or We are required by law…. If you are browsing the [Baystate] web site, a cookie identifies only your browser!*" ¶¶ 21, 23. *See also* ¶¶ 21-25 (Defendant's Notice of Privacy Practices, Privacy Policy, and HIPAA Notice). Moreover, the reason Baystate bugged its website in the first instance is so that Meta and Google can use the patient's personal health information ("PHI") to provide Baystate with enhanced online advertising and analytical services, and increased revenues. ¶¶ 85-87, 106, 138-139, 141. The tracking technology is not required for any legitimate purpose related to serving patients—it is not needed for the Website to operate, for patients to be able to search for information or request appointments, or for Baystate to provide patients with the patient portal. ¶¶ 82-83.

On March 16, 2023, the FTC Office of Technology issued a blog posting titled "Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking," in which the FTC admonished healthcare providers about the use of pixel tracking and the serious privacy violations such tracking causes. ¶ 94. On July 20, 2023, the FTC and the U.S. Department of Health and Human Services Office for Civil Rights issued a press release explicitly cautioning hospitals, such as Baystate, about "the privacy and security risks related to the use of online tracking technologies integrated into their

websites or mobile apps that may be impermissibly disclosing consumers' sensitive personal health data to third parties." ¶ 89. That release stated that a joint letter had been sent to some 130 hospitals and healthcare providers to alert them about concerns in using technologies such as the Meta/Facebook pixel and Google Analytics." ¶ 91. After this admonishment, Baystate and other hospitals removed the Pixel from their websites. ¶ 51. Plaintiff and other patients were left shocked and distressed that Baystate was illegally disclosing their private healthcare information. ¶¶ 104-105. The resulting harms are continuing, as patients' confidential information cannot be retrieved once it has been disclosed and are now being used by third parties for their own purposes. ¶ 109.

## ARGUMENT

"On a motion to dismiss, the Court's role is to 'test the sufficiency of the complaint, not to decide the merits[.]'" *DS Advanced Tech. v. Ledvance LLC*, 2025 WL 959259, at *6 (D. Mass. Mar. 31, 2025). "[T]he Court must determine 'whether, construing the well-pleaded facts of the complaint in the light most favorable to the [plaintiff], the complaint states a claim for which relief can be granted.'" *Cure v. Factory Mut. Ins. Co.*, 2025 WL 360622, at *3 (D. Mass. Jan. 31, 2025) (quoting *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020)). Plaintiff need only allege "'a plausible entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Plaintiff sufficiently alleges that PHI was disclosed through Baystate's unlawful use of online tracking technology, and that the disclosures violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("ECPA") and Massachusetts' Right to Privacy, Mass. G.L. c 214 § 1B, and resulted in breaches of implied contract and fiduciary duties. Defendant's efforts to dismiss the claims are premature and must be rejected.

## I.    PLAINTIFF ALLEGES HER PHI WAS DISCLOSED.

HIPAA defines "protected health information," or "PHI" as "individually identifiable" information that is "created or received by a health care provider" and that "[r]elates to the past, present, or future physical or mental health or condition of an individual" or the "provision of health care to an individual." 45 C.F.R. § 160.103. Plaintiff alleges that the Website is designed for patients to communicate with Baystate, including by allowing individuals to research doctors and request to schedule appointments with doctors, register for support groups, research health conditions and learn about related services offered by Baystate, learn about medical procedures offered by Baystate, and sign in to a personal patient portal called MyBaystate. ¶¶ 15, 63-80. Patients can also use search bars on Baystate's Website to type in the specific information, medical condition, medical procedure, type of doctor, or doctor about whom they want more information. ¶¶ 18, 63-80. Plaintiff is a patient of Baystate and used Baystate's Website in connection with her healthcare, including to schedule a mammogram, and log in to the MyBaystate patient portal. ¶ 96. Plaintiff then alleges that code on the Baystate Website disclosed her health and personally identifying information to Facebook and Google along with her Facebook ID and IP address, and confirmed that Facebook received **80 disclosures** regarding her activity in less than a year-and-a-half from the Website. ¶¶ 97-102.

Plaintiff's allegations sufficiently plead the disclosure of PHI because she alleges that she took actions on the website that revealed her status as a patient of Baystate and the specific health services she received, and that such actions were disclosed along with her Facebook ID and IP address. Similar allegations have been found by numerous courts to allege disclosures of PHI. *See A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) ("Plaintiffs' allegations regarding their individual experiences using [defendant's] online platform—and the inferences drawn from those experiences—are sufficient to plausibly allege that [defendant]

disclosed information regarding their personal health conditions and treatments to third parties."); *Doe v. Bayhealth Medical Center, Inc,* No. N24C-09-002 FJJ, 2025 WL 1010403, at *6 (Del. Super. Apr. 4, 2025) (utilizing defendant's public-facing webpage "to access a patient portal" revealed "a protected patient status" and was PHI); *Jarrell v. Adena Health Sys.*, 2025 WL 81305, at *1 (S.D. Ohio Jan. 13, 2025) (finding "searches for specific health conditions and treatment and the booking of medical appointments" were PHI); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (disclosure of "names, emails, computer IP addresses, device identifiers, web URLs, and the days on which they sought treatment, as well as the services they selected, and their patient statuses, medical conditions, treatments, and provider and appointment information" were disclosures of PHI); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) (website searches filtered by physician specialty and booking appointments to obtain treatment constituted PHI); *In re Meta Pixel Healthcare Litig*., 647 F.Supp.3d 778, 791-93 (N.D. Cal. 2022) (protected patient status disclosed via the pixel gathering the defendant's patient portal URL and plaintiff's act of clicking the Log In button to the patient portal).

Defendant's reliance on *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780, 802, 807 (N.D. Tex. 2024), is misplaced. In *Becerra*, two hospitals and a healthcare system sued as covered entities under HIPAA, and the identifying information at issue was IP addresses. The Court in *Becerra* held that to establish PHI, the website visitor's subjective intent had to be known and had to relate to their *own* healthcare because an IP address alone was not sufficient to serve as an identifier for PHI purposes. Here, there is nothing ambiguous about Plaintiff's interactions with the Baystate website. Disclosed information regarding signing into a patient portal and scheduling an appointment revealed Plaintiff's patient status and relate to her own healthcare. *See Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *6 (W.D. Wash. Mar.

4, 2025) (distinguishing *AHA* because "the additional disclosure of Plaintiff's patient status with Defendant makes her other interactions with Defendant's website, such as searching for particular physicians or researching specific medical conditions, clearly related to the provision of healthcare by Defendant to Plaintiff"). Moreover, Plaintiff also alleges that her activity was disclosed along with her Facebook ID. There is no dispute that a Facebook ID personally identifies Plaintiff. *See e.g., J.C. v. Cath. Health Sys., Inc.*, 2024 WL 5136236, at *13 (W.D.N.Y. Aug. 29, 2024) (*Becerra* is not persuasive where disclosure involved an individual's Facebook ID, which "very specifically identifies an actual individual"), *report and recommendation adopted*, 2025 WL 351043 (W.D.N.Y. Jan. 31, 2025); *Nienaber*, 2025 WL 692097, at *5 ("the *AHA* court addressed allegations involving the disclosure of only an IP address, which identifies a specific device").

While the exact contours of the scope and contents of Baystate's transmissions will not be determined until discovery (¶¶ 62, 86, 106), Plaintiff's allegations are sufficient to allege that the information disclosed by Baystate contained PHI.

## II.    PLAINTIFF ADEQUATELY PLEADS A VIOLATION OF THE ECPA.

In pleading a claim under the ECPA (or Wiretap Act), a plaintiff must allege that a defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003). "The statute excepts from liability interceptions where the intercepting person 'is a party to the communication or where one of the parties to the communication has given prior consent to such interception.'" *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d at 378. "But that exception does not apply where the 'aggrieved individual ... has had her oral communications intentionally intercepted by a party to those communications for the purpose of committing a crime or tort.'" *Id.* (citation omitted). Defendant

argues that the crime-tort exception does not apply and that its PHI disclosures should not be considered "Contents" under the ECPA. Both arguments fail.

### A.    The ECPA's Crime-Tort Exception Is Applicable.

Baystate's surreptitious use of Facebook and Google tracking technology to monetize patient PHI meets the circumstances sufficient to invoke the ECPA's crime-tort exception. Plaintiff alleges that Baystate intentionally and purposefully installed computer coding on its Website to surreptitiously transmit patient information to third parties, Meta and Google, for the purpose of monetizing patients' privacy for its own gain. ¶¶ 4-5, 29-58, 59-81, 82-88. Monetizing patient PHI by disclosing it to unauthorized third parties is a "violation of HIPAA and the FTC Act, as well as [Mass. G.L. c. 214, § 1B]." ¶ 134; *see also* ¶¶ 135-140, 144-154. Baystate's intentional conduct breached its implied contacts with patients (¶¶ 155-164) and tortiously breached its fiduciary duties to its patients (¶¶ 165-173). Baystate "installed the Google and Meta code on its website in a way that enabled transmissions from across Defendant's website, not just the web pages detailed [in the Complaint]." ¶ 62 ("Discovery will show the full scope of Defendant's disclosures[.]").

### 1.    Plaintiff Alleges Intentional Conduct.

Baystate challenges whether Plaintiff has pleaded that Baystate had an unlawful *purpose* beyond the interception of her PHI. However, numerous courts have found under nearly identical facts that a healthcare defendant that intercepts patient PHI online, discloses that data to Facebook and or Google in violation of HIPAA and other laws, and makes the disclosures for enhanced marketing or analytical services, has acted with the requisite tortious intent.

In *Aspen Dental Mgmt.*, 2024 WL 4119153, the court recently denied defendant's motion to dismiss, holding: "Accepting Plaintiffs' allegations as true, as the Court must at this stage, [defendant] placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain," in violation of HIPAA's criminal

liability for one who knowingly discloses PHI to third parties. *Id.* at *3. The court found that while defendant claimed that "its only purpose was to improve its marketing and boost its revenues," this purpose cannot be detached from the reality that improved marketing and revenue boost was achieved by disclosing plaintiff's information. *Id. See also Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d at 380 ("A defendant's criminal or tortious purpose of 'knowingly ... disclos[ing] [PHI] to another person,' 42 U.S.C. § 1320d-6, in violation of HIPAA, may satisfy the crime-tort exception."); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) ("Plaintiffs have plausibly alleged that Defendant's purpose was to commit an act that is punishable as a crime under 42 U.S.C. § 1320d-6: knowingly disclosing [PHI] without authorization for marketing purposes."); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) (crime-tort exception plausibly applies where defendant's primary motivation was to use patient data for marketing, in violation of HIPAA); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (allegations that defendant "knowingly transmits [PHI]" "for the purpose of financial gain" was "sufficient to invoke the HIPAA exception-to-the-party-exception"); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) (allegation that defendant intercepted plaintiff's information with "the intent to disclose that information in violation of HIPAA" satisfied intent requirement).

Plaintiff's allegations are sufficient for this stage of the case. The court reached that exact conclusion in *Lugo v. Inova Health Care Servs.*, 2025 WL 905191 (E.D. Va. Mar. 25, 2025). There, the court found "that Plaintiff's allegations that [defendant] intercepted and disclosed patient's personal health information in violation of HIPAA and [the Virginia Health Records Privacy Act] in order to increase the success of [defendant]'s marketing are sufficient to invoke the crime-tort exception to the ECPA at the motion to dismiss stage." *Id.* at *8. The court further

held that "[d]iscovery is needed to reveal whether [defendant] had a criminal or tortious intent." *Id.* (citing *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) ("It may be discovery reveals that Defendant had neither a criminal nor tortious intent, but at the motion to dismiss stage Plaintiffs have met their burden for their ECPA claim to survive.")).

While Baystate protests that it did not disclose Plaintiff's PHI for the purpose of harming her, the "Court cannot adjudicate [defendant's] factual dispute on a motion to dismiss for failure to state a claim." *Kurowski*, 2023 WL 8544084, at *3. Indeed, courts agree that the "[a]pplication of the crime-tort exception appears more fit for resolution at summary judgment or trial than at the motion to dismiss stage." *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025). *See also In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 720 ("While Plaintiffs have alleged [defendant's] motivations, determination of [defendant's] actual purpose for installing and using the Pixel Code requires a factual undertaking. Plaintiffs, without the benefit of discovery, have met the pleading requirements to plausibly allege the crime-tort exception applies."); *Cooper*, 742 F. Supp. 3d at 381 ("[Defendant] will be at liberty to attempt to establish in discovery facts supporting, *inter alia*, that, to the extent it took the above actions, it did so without intending to facilitate Facebook's receipt of confidential patient information or to financially benefit. [Defendant] may be able to establish, at summary judgment or trial, that it acted without the requisite knowledge and intent."); *D.S. v. Tallahassee Mem'l HealthCare*, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024) (finding "highly technical questions" of fact and declining "to make dispositive merits determinations on a motion to dismiss, where the Rule 8 bar is low") (citing *Cyr. v. Orlando Health, Inc.*, No. 8:23-cv-588WJF-CPT (M.D. Fla. July 5, 2023) (denying dismissal: finding "little utility in a pleadings repartee at the beginning of a case that is as complicated and well-lawyered as this one")).

10

### 2. Plaintiff Alleges an Independent Purpose.

Baystate also argues that the crime-tort exception does not apply because the underlying criminal or tortious acts must be distinct from the alleged "wiretapping" or disclosure of PHI in this case. Def. Br. 9-11. However, the First Circuit has never adopted a requirement that the underlying tortious act must be distinct from the ECPA violation and Defendant cites no binding authority for this requirement. However, even if the crime-tort exception did require an act distinct from the alleged wiretapping, Plaintiff plausibly alleges that Baystate intended to violate HIPAA, the Massachusetts Privacy Statute, the FTC Act, and breach its fiduciary duties to patients when it transmitted Plaintiff's information to third parties, all of which are distinct from the improper interception at issue in the ECPA claim. *See* ¶¶ 134-141, 144-154, 165-173.

The majority of courts that have considered the application of the crime-tort exception in similar circumstances have found that violations of privacy laws such as HIPAA and similar state statutes were independent crimes or torts. For example, in *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927 (D. Minn. 2024), defendant "monetized [plaintiff's] private and protected health data" using the same technology as here. There, the court sustained the ECPA claim, finding that plaintiff had pleaded that defendant's conduct had also violated a Minnesota health records privacy statute, unjust enrichment, and HIPAA. *Id.* at 927-28 (allegations "sufficiently plead an interception made with the purpose of violating one or more laws, independent from the act of interception itself"). *See also Aspen Dental Mgmt.*, 2024 WL 4119153, at *3 ("Even if the crime-tort exception did require an act distinct from the alleged wiretapping, Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim."); *Lugo*, 2025 WL 905191, at *6 ("Courts around the country … have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA and other state health privacy

laws.") (citing cases); *Kurowski*, 2023 WL 8544084, at *3 (plausibly stated ECPA claim and invoked crime-tort exception by alleging HIPAA violations arising out of the alleged interception)); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 719-20 (violations of HIPAA and Minnesota privacy laws were independent from wiretap); *United States v. Easy Healthcare Corp.*, 2023 WL 4247984, at *2 (FTC June 22, 2023) (permanent injunction and civil penalties for violation of FTC Act for improper use of pixel, under 15 U.S.C. §§ 53(b), 57b, and 56(a)(1)).[2]

Defendant's reliance on a line of cases that did not involve a violation of HIPAA as the independent crime or tort are inapposite. *See, e.g., Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (wiretapping was not alleged to have been done "for the purpose of committing some other subsequent crime or tort," rather plaintiffs argued "that the taping itself was tortious"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (same; "plaintiffs point to no legal authority" holding otherwise).

Defendant's final argument, to invoke the rule of lenity, is inapt. That doctrine "counsels that 'grievous' ambiguities in a criminal statute are to be resolved in favor of the defendant." *United States v. Foley*, 2015 WL 7194519, at *3 (D. Mass. Nov. 16, 2015), *aff'd*, 683 F. App'x 1 (1st Cir. 2017). "Criminal statutes … are construed strictly and are subject to the rule of lenity, which prohibits punishment in circumstances where a reasonable person would be unable to

---

[2] Defendant's out of Circuit case citations are not on point. At best, those cases represent a minority view from certain courts in the Ninth Circuit, and used circular reasoning. *See Williams v. TMC Health*, 2024 WL 4364150, at *3 (D. Ariz. Sept. 30, 2024) (dismissing ECPA claim after finding defendant did not violate HIPAA); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024), *on reconsideration*, 2024 WL 2037404 (Apr. 11, 2024) (dismissing ECPA claim and finding plaintiffs did not allege disclosure of medical information); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024) (same); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (disclosure of plaintiff's non-medical information was not independently tortious); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (applying minority view that disclosure of PHI is not sufficiently independent under ECPA). *See also Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) (did not consider ECPA).

determine whether his or her conduct is actually prohibited. But the rule of lenity is particular to the criminal law and has no bearing here." *Harris as next friend of RNH v. Adams*, 2024 WL 4843837, at *20 (D. Mass. Nov. 20, 2024). *Accord United States v. Toth*, 2020 WL 5549111, at *6 (D. Mass. Sept. 16, 2020), *aff'd*, 33 F.4th 1 (1st Cir. 2022); *Lawson v. FMR LLC*, 670 F.3d 61, 76 (1st Cir. 2012), *rev'd on other grounds*, 571 U.S. 429 (2014); *Soto-Hernandez v. Holder*, 729 F.3d 1, 5 (1st Cir. 2013). Even in criminal law, "[t]he simple existence of some statutory ambiguity ... is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138 (1998).[3]

Here, Baystate is not being subjected to any criminal penalties, nor is it subject to being charged under a criminal statute, nor is there an issue of legal ambiguity. Instead, Defendant's purposeful conduct under the ECPA is actionable for civil liability because Plaintiff alleges Baystate either acted in tortious manner (as a privacy or fiduciary breach) or theoretically violated HIPAA privacy (which is not a separate claim in this case in any event, as there is no private right of action, *see Yaghoobi v. Tufts Med. Ctr., Inc.*, 2025 WL 81591, at *5 (D. Mass. Jan. 13, 2025)). As demonstrated above, the "crime-tort exception" applies and has been adequately pleaded.

### B.    The Material Disclosed by Baystate Constitutes "Contents" under ECPA.

Finally, Baystate argues that Plaintiff "does not allege Baystate intercepted the 'contents' of any communication." Def. Br. at 11. This argument ignores both the law and the facts alleged.

"Contents" includes information concerning the substance, purport, or meaning of a communication," including "personally identifiable information such as a party's name, date of

---

[3] Defendant's submission of 19 pages of extraneous briefing on the rule of lenity (Ex. A to Def. Br.) is improper and serves to exceed the Court's 20-page limit, LR 7.1(b)(4). It is "fundamentally unfair to allow a party to use incorporation to exceed word count [or page limit]." *Promptu Sys. Corp. v. Comcast Cable Commc'ns, LLC*, 92 F.4th 1384, 1385 (Fed. Cir. 2024). The Court should disregard the extraneous briefing.

birth, and medical condition." 18 U.S.C. § 2510(8); *see In re Pharmatrak*, 329 F.3d at 18 (federal wiretap statute "broadly define[s] 'contents'"). Here, the technology that Baystate used logged which pages Plaintiff and other patients visit, which buttons they click, their "searches for medical information about conditions and procedures, the identities of their physicians, their requests to schedule appointments with physicians, registrations for support groups, patients' request to log in to the patient portal, and when a patient clicks to make a telephone call in order to schedule an appointment with a specific doctor through the site." ¶ 4. *See also* ¶¶ 30-36, 63-80, 103. This content was sent along with IP addresses and Facebook IDs. ¶¶ 3, 33-35. Plaintiff further specifically describes the information she communicated on the Baystate website, including her patient status by logging into the patient portal and scheduling a mammogram, and searching for healthcare providers. ¶ 97. Courts find similar allegations satisfy pleading requirements. In *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d at 975-76, plaintiffs alleged "that their data included personal search queries – such as specialty healthcare providers and treatments for medical conditions – and therefore plausibly conveyed content: their PHI." *Id.* (citing *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022)). The court held this information was "contents" under ECPA. *Id. See also Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *12-13 (N.D. Cal. Aug. 22, 2023); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795-96 (N.D. Cal. 2022)). Plaintiff adequately alleges transmission of "contents."

Defendant's assertions otherwise "once again, raise factual disputes that cannot be resolved on a motion to dismiss, when well-pleaded facts are presumed true and reasonable inferences are drawn in favor of the plaintiffs." *Cure v. Factory Mut. Ins. Co.*, 2025 WL 360622, at *5. Questions of fact are appropriately addressed on a full evidentiary record after discovery. *Id.* at *4 & n.3 ("Such parsing, however, is appropriately addressed after discovery, not on a motion to dismiss.")

(citing *Monteiro v. The Child's Hosp. Corp.*, No. 22-cv-10069-AK, Dkt. 56 (D. Mass. Mar. 15, 2023)). Defendant also relies on inapposite cases that do not concern the technology at issue in this case, PHI, or ECPA. *See Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *1 (Fla. Cir. Ct. June 17, 2021).

III.    **Plaintiff Adequately Pleads a Violation of Massachusetts' Right to Privacy.**

Defendant argues that Plaintiff has not pleaded a privacy violation that is either *unreasonable* or *serious*, notwithstanding that Plaintiff alleges that Baystate surreptitiously transmits patient PHI from its Website to third parties for purposes of advertising and revenue generation. Defendant's argument fails as a matter of law and is premature.

Massachusetts' Right to Privacy Law, Mass. Gen. Laws ch. 214, § 1B, provides "a right against unreasonable, substantial or serious interference" for a person's privacy. A violation may include a public disclosure of private facts or intrusion upon the plaintiff's solitude or seclusion. *Polay v. McMahon*, 10 N.E.3d 1122, 382 1126 (Mass. 2014). Whether an intrusion is unreasonable, substantial, or serious is a fact question. *Id. See also Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667 (Mass. 2005) (statute proscribes disclosures "about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest").

Baystate's factual challenge to Plaintiff's allegations fails for multiple reasons. First, Plaintiff has alleged that Baystate shared her PHI with Facebook and Google. *See supra* Section I. Indeed, the Website is "designed for patients to communicate with Defendant" with regard to facilitating their healthcare. ¶ 18. Plaintiff communicated on the Website to do just that. ¶ 97. Second, Plaintiff's expectation of privacy on the Website "are grounded in her status as a patient of Defendant's, Defendant's legal obligations to maintain the confidentiality of wire communications and communications with patients, state and federal laws protecting the

confidentiality of patient communications and medical information, and Defendant's express promises." ¶ 95. Despite these obligations and promises, Baystate purposefully installed code on its Website that transmitted patient PHI to Facebook and Google. ¶¶ 98, 99, 106.

Plaintiff sufficiently alleges Baystate's conduct resulted in an unreasonable, substantial, and serious intrusion. Under virtually identical circumstances, Massachusetts courts have concluded that these allegations are sufficient for pleading purposes. *See Doe v. Boston Med. Ctr. Corp.*, 2023 WL 7105628, at *1 (Mass. Super. Sep. 14, 2023) (alleged disclosure of personal and healthcare-related information over multiple visits to BMC's public website "for the sole purpose of targeted advertising efforts suffices to advance Plaintiffs' [statutory privacy] claim"); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 150 (D. Mass. 2024) (health information disclosed to Facebook, "*e.g.*, plaintiff's identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location) constitutes information of a 'highly personal or intimate nature'"); *Doe v. Emerson Hosp.*, 2023 WL 8869624, at *5 (Mass. Super. Nov. 22, 2023) (alleged disclosures of "information about treating doctors, potential doctors, conditions, treatments, appointments, search terms, bill payment … suffice to advance Plaintiff's claim for invasion of privacy").

Baystate concedes that decisions from this Court and several Massachusetts Superior Courts have declined to dismiss Mass. Gen. Laws ch. 214, § 1B claims under nearly identical circumstances. Def. Br. at 13 n.4. Baystate's argument that those persuasive opinions regarding Massachusetts law should be disregarded because they pre-date the out-of-circuit and inapt decision in *Becerra*, 2024 WL 3075865 is incorrect for the reasons explained above. *See supra* Section I. Further, that ruling has no impact where Massachusetts statutory and common law claims are alleged. *See Doe v. Bayhealth Med. Ctr. Inc.*, 2025 WL 1010403, at *6 (Del. Super.

Apr. 4, 2025) ("HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations"). The other cases Defendant cites either do not concern Massachusetts law, are factually distinguishable, or concerned later stages of litigation. *See Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 123 (D. Mass. 2015) (employer's request to police for "wellness check" on employee was not invasion of privacy); *Wofse v. Horn*, 523 F. Supp. 3d 122, 138 (D. Mass. 2021) (summary judgment); *Hubbard v. Google LLC*, 2024 WL 3302066, at *1 (N.D. Cal. July 1, 2024) (did not concern PHI but YouTube activity); *Okash v. Essentia Health*, 2024 WL 1285779, at *1 (D. Minn. Mar. 26, 2024) (applying Minnesota common law; finding plaintiff failed to allege disclosure of PHI and defendant disclosed use of Facebook pixel); *Koppel v. Moses*, 2020 WL 6292871, at *9 (D. Mass. Oct. 27, 2020) (email sent to MIT computer science club "did not disclose any information not already known to the reader"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (plaintiffs "gave general consent to Facebook's data tracking and collection practices"); *Clark v. Zwicker & Assocs., P.C.*, 2024 WL 2025568, at *7 (D. Mass. May 7, 2024) (summary judgment); *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (alleged disclosures authorized by law).

Baystate cannot evade the salient fact that several Massachusetts courts have sustained claims under the same law based on similar facts at the motion to dismiss stage. The challenges Baystate raises are questions of fact that should be addressed at a later stage of the case. *See, e.g.*, *Alves v. BJ's Wholesale Club, Inc.*, 2023 WL 4456956, at *7 (Mass. Super. June 21, 2023) ("whether an intrusion transgresses the privacy statute is a fact question").

## IV.    Plaintiff Adequately Pleads a Claim for Breach of Implied Contract.

Baystate denies it breached an express contract but does little to address Plaintiff's claim for breach of an *implied* contract. "In the absence of an express agreement, an implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties." *T.F. v.*

*B.L.*, 813 N.E.2d 1244, 1249 (Mass. 2004). A "contract implied in law is an obligation created by law 'for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.... [C]onsiderations of equity and morality play a large part ... in constructing a quasi-contract.'" *Salamon v. Terra*, 477 N.E.2d 1029, 1031 (Mass. 1985).

Plaintiff meets these two requirements. Baystate designed the Website so that Plaintiff and other patients could schedule appointments with specific providers, log into the patient portal, register for support groups and other care, and obtain information related to their healthcare. ¶¶ 18-20, 63-81. Baystate also made express promises to keep PHI communicated on the Website confidential. ¶¶ 2, 21-26.[4] Thus, the conduct of the parties and their relationship as patient and healthcare provider, support an implied contract requiring Baystate to keep PHI confidential, and Plaintiff was harmed the moment Baystate disclosed her private and confidential health information to Facebook and Google. ¶¶ 104-09, 163.

Allegations similar to Plaintiff's have been found sufficient to sustain an implied contract claim. *See, e.g.*, *Tenet*, 731 F. Supp. 3d at 150 ("[C]ourts addressing the use of the Meta Pixel tracker have found similar allegations sufficient to support an implied contract claim."); *Bayhealth*, 2025 WL 1010403, at *10-11 (defendant disclosed "sensitive health information to third parties for profit"); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023) (defendants used Meta Pixel; holding that it was plausible that the parties entered into an implied contract by their actions).[5] Moreover, Defendant's merits challenge here is premature. *See*

---

[4] Defendant's pre-existing duty argument fails as HIPAA lacks a private right of action and not all of Baystate's alleged disclosures violated HIPAA. *See Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011), *aff'd*, 672 F.3d 64 (1st Cir. 2012); *Gravallese v. Mass. Parole Bd.*, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995) (parole denial; summary judgment).

[5] Defendant relies on several cases concerning data breaches where plaintiffs failed to allege defendants affirmatively violated implied contractual duties. *See Reidy v. Umass Memorial Med. Ctr., Inc.*, 2021 WL 6777622, at *1 (Mass. Super. June 17, 2021) (data breach of hospital vendor);

*Emerson Hospital,* 2023 WL 8869624, at *5 ("allegations sufficiently suggest that [defendant] may have entered into an implied contract which included an agreement not to disclose health information to third parties, like Facebook" – "better course is to assess this claim on a fuller record"); *In re Boston Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 24 (D. Mass. 2021) (denying dismissal: "The court needs the benefit of further factual development of the contractual claims to resolve the issue on the merits.").[6]

## V.    Plaintiff Adequately Pleads a Claim for Breach of Fiduciary Duty.

Baystate's challenge to Plaintiff's fiduciary duty claim is based on the unsupported factual assertion that Plaintiff's use of the Website to schedule a mammogram and log into the patient portal was "beyond the context of medical treatment" and outside the scope of the physician-patient relationship. Def. Br. at 17. This self-serving factual assertion conflicts with Plaintiff's well-pled allegations and is premature. Healthcare providers are fiduciaries and owe their patients a duty of confidence. *In re Shields Health*, 721 F. Supp. 3d at 161; *Alberts v. Devine*, 479 N.E.2d 113, 119 (Mass. 1985) ("all physicians owe their patients a duty [of confidentiality], for violation of which the law provides a remedy"). Courts have found that plaintiffs alleging similar facts have stated viable claims for breach of fiduciary duty against their healthcare providers for disclosing their personal healthcare information. *See, e.g.*, *Tenet*, 731 F. Supp. 3d at 151 (applying Massachusetts law and finding "Plaintiff, a patient at Tenet, states a viable claim of breach of fiduciary duty against her healthcare provider for disclosing her Private Information"); *A.J. v.*

---

*Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (data breach of law firm); *Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (data breach of pharmacy). *See also Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 163 (D. Mass. 2024) (plausibly alleged violation of implied contract).

[6] Defendant's reliance on summary judgment decisions is inapposite. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 229 (1st Cir. 2005) (summary judgment decision); *Sea Breeze Estates, LLC v. Jarema*, 113 N.E.3d 355, 357 (Mass. App. 2018) (same); *Beauregard v. Meldon*, 2019 WL 6877185, at *1 (D. Mass. Dec. 17, 2019) (same).

*LMND Med. Group Inc.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (Plaintiffs "reposed their trust and confidence in [defendant] to maintain confidentiality of that information, and that [defendant] breached its fiduciary duty of confidentiality by its unauthorized disclosure."). *See also Weld v. CVS Pharmacy, Inc.*, 1999 WL 494114, at *5 (Mass. Super. June 29, 1999) (reasonable to infer that private medical and prescription information "will be maintained in confidence" as gives rise to a fiduciary duty).

Baystate's strawman arguments are disingenuous. Plaintiff has not alleged that Baystate owes a fiduciary to every Website visitor; Plaintiff and the Class are *patients*. Baystate knows that people who schedule appointments and log into the patient portal, among other actions, on the Website are patients. In addition, Defendant cites several cases that are factually distinguishable. *See Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014) (securities case); *Korper v. Weinstein*, 783 N.E.2d 877, 881 (Mass. App. 2003) (doctor's "sexual affair with a patient" was outside scope of "undertakings … as a physician"); *Kelley v. CVS Pharm., Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Aug. 24, 2007) (disclosure did not involve healthcare information).

Baystate may deny whether a fiduciary duty exists, but not at this stage of the litigation. *Accord, e.g.*, *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 303 (1st Cir. 2004); *Szawlowski v. Price*, 240 N.E.3d 799, at *5 (Mass. App. 2024); *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 81 N.E.3d 782, 791 (Mass. App. 2017).

## CONCLUSION

The Court should deny Defendant's Motion to Dismiss. The scope of Defendant's breaches and the merits of Plaintiff's claims can only be appropriately challenged on a full evidentiary record, not now. If the Court grants any part of the Motion, Plaintiff respectfully requests leave to amend. *Accord DS Advanced Tech.*, 2025 WL 959259, at *6 (citing Fed. R. Civ. P. 15(a)).

Date: May 2, 2025                    Respectfully submitted,


                                     */s/ Lane L. Vines*
                                     Sherrie R. Savett (*pro hac vice*)
                                     Lane L. Vines (*pro hac vice*)
                                     BERGER MONTAGUE PC
                                     1818 Market Street, Suite 3600
                                     Philadelphia, PA 19103
                                     Tel.: (215) 875-3000
                                     ssavett@bm.net
                                     lvines@bm.net

                                     Sophia M. Rios (*pro hac vice*)
                                     BERGER MONTAGUE PC
                                     8241 La Mesa Blvd., Suite A
                                     La Mesa, CA 91942
                                     Tel.: (619) 489-0300
                                     srios@bm.net

                                     Jonathan Shapiro (BBO No. 454220)
                                     Shapiro & Teitelbaum LLP
                                     55 Union Street, 4th Floor
                                     Boston, MA 02108
                                     Tel.: (617) 742-5800
                                     jshapiro@jsmtlegal.com

                                     *Attorneys for Plaintiff and the proposed Class*

21

**CERTIFICATE OF SERVICE**

I, Lane L. Vines, do hereby certify that on May 2, 2025, a true and correct copy of the

foregoing document was served upon all counsel of record via the CM/ECF system of the United

States District Court for the District of Massachusetts.


                                        */s/ Lane L. Vines*
                                        Lane L. Vines