**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE, Individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BAYSTATE HEALTH SYSTEM, INC.,<br><br>Defendant. | Case No.: 1:25-cv-10337-JEK |

**BAYSTATE HEALTH, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiff's Allegations Do Not Plausibly Support Any Of Her Claims. ........ 1

II. Plaintiff Fails To State A Claim Under the ECPA ........ 2

a. Plaintiff Fails To Plausibly Allege That Baystate Intended To Commit A Crime Or Tort. ........ 3

b. Plaintiff Fails To Allege An Independent Crime Or Tort. ........ 4

c. Plaintiff Fails To Allege That Baystate Disclosed "Contents" Under The ECPA. ........ 6

III. Plaintiff Fails To State A Claim Under The Massachusetts Right to Privacy Act ........ 7

IV. Plaintiff Fails To State A Claim For Breach Of Contract ........ 8

V. Plaintiff Fails To State A Claim For Breach of Fiduciary Duty ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt. Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................4, 5

*A.J. v. LMND Med. Grp., Inc.*
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)....................10

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*,
81 N.E.3d 782 (Mass. App. 2017) ....................10

*Branson v. Concord Hosp. Inc.*,
No. 217-2024- CV-00295 (N.H. Super. Apr. 28, 2025) ....................2

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................8

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................3

*Cook v. Gamestop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................6

*Cooper v. Mount Sinai Health Sys. Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....................2

*Doe v. Bayhealth Med. Ctr. Inc.*,
2025 WL 1010403 (Del. Super. Apr. 4, 2025) ....................9

*Doe v. Boston Med. Ctr. Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023)....................7

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................4

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ....................9

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................7, 8, 10

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ....................4, 5

*J.C. v. Cath. Health Sys., Inc.*,
2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ....................2

*Kurowski v. Rush Sys. for Health*,
No. 22-CV-5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ....................4, 5

*Lugo v. Inova Health Care Servs.*,
No. 1:24-cv-700, 2025 WL 905191 (E.D. Va. March 25, 2025) ....................4

*McAdams v. Mass. Mut. Life Ins. Co.*,
391 F.3d 287 (1st Cir. 2004) ....................10

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ....................5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................6

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................2, 5

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb 27, 2025) ....................4

*Polay v. McMahon*,
468 Mass 379 (2014) ....................7

*Szawlowski v. Price*,
240 N.E.3d 799 (Mass. App. 2024) ....................10

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................8

*United States v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998) ....................3

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ....................3, 4

*Weld v. CVS Pharmacy, Inc.*,
1999 WL 494114 (Mass. Super. Ct. June 29, 1999) ....................10

**Statutes**

Electronic Communications Privacy Act ........................................................................ *passim*

FTC Act ........................................................................................................................3

HIPAA ....................................................................................................................2, 3, 4

Massachusetts Right to Privacy Act ..................................................................................7

## INTRODUCTION

Plaintiff's Opposition urges the Court to apply an expansive and untenable interpretation of the Electronic Communications Privacy Act ("ECPA") that would criminalize Baystate Health, Inc. ("Baystate") and dozens of similarly situated businesses—for using ubiquitous marketing technologies for legally permissible purposes. Moreover, Plaintiff's argument that her protected health information or other private information ("PHI") was disclosed vis-à-vis her usage of Baystate's public website is not supported by the actual allegations in her Amended Complaint ("Complaint"). Accordingly, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff's Allegations Do Not Plausibly Support Any Of Her Claims.

Plaintiff's arguments in her Opposition (Doc. No. 30) are inconsistent with and unsupported by her actual factual allegations in the Complaint. Plaintiff asserts that she has sufficiently plead that her Private Health Information ("PHI") was disclosed because she "alleges that she took actions on the website that reveal her status as a patient of Baystate" and that this information along with her Facebook ID and IP address were transmitted to third parties. Doc. No. 30 at 5. Plaintiff, however, fails to state any specific information she provided to Baystate that would qualify as PHI or how that would reveal her status as a patient. She alleges she used Baystate's website "to schedule a mammogram and log in to the MyBaystate patient portal." *Id.* Notably, Plaintiff does *not* allege that any information in the MyChart portal was disclosed. Moreover, a person could access the scheduling or log in page for any number of reasons irrelevant to seeking healthcare. Meta and Google would not know that Plaintiff—or anyone—was or is a patient of Baystate and would not have access to any PHI simply by someone accessing a scheduling or log in page. Plaintiff did not disclose *any* PHI to Baystate's public website (nor does she plausibly allege she did).

Plaintiff's reliance on out-of-circuit precedents such as *Cooper* is misplaced. In *Cooper*, the Court focused on the plaintiff's allegations that she received targeted Facebook advertisements keyed to her specific health conditions to support the inference that at least some information transmitted via the subject website was PHI. *Cooper v. Mount Sinai Health Sys. Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024). Here, Plaintiff does not allege that she or any class member received targeted advertisements, let alone targeted advertisements relevant to any purported health conditions specific to Plaintiff. Plaintiff's allegation that the Facebook privacy tools showed approximately 80 communications between Plaintiff and the Website to Facebook from November 19, 2021 to April 10, 2023 does not offer support for the conclusion that any of the information allegedly transmitted was PHI.

Further, although *Becerra* solely discusses PHI under HIPAA, it plainly undermines Plaintiff's theory that *her* PHI was disclosed, as it explains that web-browsing on a public website *does not* reveal PHI. Numerous courts have granted motions to dismiss similar claims on that basis. *See* Doc. No. 26 at 5; *Branson v. Concord Hosp. Inc.,* No. 217-2024- CV-00295, Order on Def.'s Mot. Dismiss, at 11, 13, 16 (N.H. Super. Apr. 28, 2025) (attached as **Exhibit A)** (dismissing claims under state wiretapping act, state patient privacy law, and for invasion of privacy where plaintiff relied solely on hypotheticals and failed to allege with specificity what PHI he actually transmitted or how it was used). The cases cited by Plaintiff do not demand a different outcome.[1]

## II. Plaintiff Fails To State A Claim Under the ECPA

Plaintiff does not dispute that she must sufficiently invoke the crime-tort exception for her ECPA claim to survive the statute's one-party consent regime. Because Plaintiff fails to plausibly

[1] The cases cited by Plaintiff involved allegations of plaintiffs receiving targeted advertisements and thus the courts found the plaintiffs plausibly alleged their PHI was transmitted. *See e.g., J.C. v. Cath. Health Sys., Inc.*, 2024 WL 5136236, at *2 (W.D.N.Y. Aug. 29, 2024); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *1 (W.D. Wash. Mar. 4, 2025).

allege facts to invoke the crime-tort exception, her ECPA claim should be dismissed as a matter of law. As an initial matter, Plaintiff concedes that "not all of Baystate's disclosures violated HIPAA." Doc. 30. at 18 n.4. This concession dooms each and every one of her claims.

**a. Plaintiff Fails To Plausibly Allege That Baystate Intended To Commit A Crime Or Tort.**

Plaintiff's contention that she has sufficiently pled the crime-tort exception to the one-party consent rule fails under the plain language of the ECPA, First Circuit precedent, and well-reasoned federal case law. As this Court has held, Plaintiff must allege either "(1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986) (emphasis added); *see also United States v. McHugh*, 57 F. Supp. 3d 95, 99–100 (D. Mass. 2014). The mere allegation that an interception resulted in a criminal or tortious act does not suffice. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). The requirement of specific intent or purpose to commit a crime or tort is supported by the text of the ECPA itself, which uses the word "purpose," meaning courts must presume that it has done so "for a reason." *Id.* "Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications resulting in a tortious or criminal act." *Id.* (emphasis in original); *see also United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting "superficial logic" similar to Plaintiff's here).

Thus, the question is not whether Baystate violated HIPAA, the FTC Act, or Massachusetts statutory or common law (it did not), but whether Baystate installed the tracking technologies with the *purpose* of doing so. In other words, Plaintiff must plausibly allege that Baystate, a non-profit healthcare provider, installed tracking technologies on its public website with the *primary*

*motivation* of violating HIPAA or committing some tortious act against its patients and other website users. *See McHugh,* 57 F. Supp. at 100. Plaintiff does not and cannot satisfy that high bar. At most, Plaintiff alleges that Baystate used these technologies for enhanced marketing or analytical services. But numerous courts have held that a purpose to engage in digital marketing is not criminal or tortious. Doc. 26 at 8–9 (listing cases); *see also Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim whereby "Plaintiff's own account, Genesis used the tracking technology to "benefit Genesis Health and its marketing and advertising purposes… not *for the purpose* of knowingly committing a violation of the HIPAA").

Plaintiff primarily relies on out-of-circuit district court decisions in support of her argument that the purpose for taking the act is irrelevant, so long as the act itself is purposeful. *See* Doc. No. 30 at 9–10 (citing *In re Grp. Health Plan Litig.,* 709 F. Supp. 3d 707, 719–20 (D. Minn. 2023); *Kurowski v. Rush Sys. for Health,* 2024 WL 3455020, at *3 (N.D. Ill. July 18, 2024); *Lugo v. Inova Health Care Servs.,* 2025 WL 905191, at *6 (E.D. Va. March 25, 2025); *A.D. v. Aspen Dental Mgmt. Inc.*, 2024 WL 4119153, at *2–3 (N.D. Ill. Sept. 9, 2024). The analysis in these decisions, however, runs contrary to the decisions within this Circuit, which require an actual criminal or tortious purpose. *See McHugh,* 57 F. Supp. at 100.

Plaintiff's allegations are insufficient at this stage—or any stage—of the litigation to establish that Baystate acted with the purpose of committing a crime or tort. Indeed, several courts have dismissed ECPA claims in similar healthcare pixel cases at the motion to dismiss stage. *See* Doc. 26 at 8-9 (listing cases); *see also Genesis Health Sys.*, 2025 WL 1000192, at *9 (same); *Okash v. Essentia Health*, 2025 WL 642913, at *3 (D. Minn. Feb 27, 2025) (same).

**b. Plaintiff Fails To Allege An Independent Crime Or Tort.**

Plaintiff's assertion that she may invoke the crime-tort exception is unavailing because the alleged crime or tort must be *independent* of the interception itself. In other words, the interception

alleged to be an ECPA violation cannot also be the *same act* that underlies the alleged crime or tort. She alleges the interception and disclosure to third parties are accomplished simultaneously. Therefore, she fails to identify any *independent* tortious or criminal conduct beyond the alleged wiretapping itself. *See, e.g., Nienaber v. Overlake Hosp. Med. Ctr.,* 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (allegations that technologies "contemporaneously transmit Plaintiff's communications to third parties," demonstrated that interception and disclosure were same act and were therefore insufficient to support ECPA claim).

The cases Plaintiff cites do not grapple with the distinction between the interception and transmission of data, are not grounded in the Act's language, and ignore First Circuit guidance that courts should construe the crime-tort exception narrowly. *See* Doc. No. 30 at 11–12. Under Plaintiff's formulation of the crime-tort exception, the exception would truly swallow the rule and render the one-party consent provision illusory. The additional cases cited by Plaintiff are also factually distinct from this case. *See Mekhail*, *N. Mem'l Health Care* 726 F. Supp. 3d 916, 927 (D. Minn. 2024) (denying motion to dismiss wiretapping claims when Pixel allowed Meta to access data on both public-facing and authenticated patient portal parts of the website); *Aspen Dental Mgmt. Inc.*, 2024 WL 4119153, at *1 (describing with specificity the information plaintiffs shared on the public website including their name, appointment type, date of birth, appointment location, email address and phone number and alleging that after entering the information they started receiving targeted advertisements on Facebook). Because Plaintiff alleges contemporaneous interception and transmission, her ECPA claim should be dismissed. Baystate maintains that should the Court find ambiguity in the ECPA, the rule of lenity applies. *See* Doc. No. 26 at 10–11; Amicus Br. Doc. No. 26 Ex. A. The cases Plaintiff cites do not change the rule's application. Doc. No. 30

at 12–13. Further Plaintiff's argument that the rule of lenity does not apply because they are seeking civil liability instead of criminal liability is unsupported by legal precedent. *Id.*

**c. Plaintiff Fails To Allege That Baystate Disclosed "Contents" Under The ECPA.**

Plaintiff fails to establish that Baystate intercepted the content of any communication. The cases relied upon by Plaintiff (Doc. No. 30 at 14) involve complaints alleging the exact information provided to the websites, that the information collected was from the patient portal, and/or that they received targeted advertising allowing a plausible inference that their information was disclosed. *See e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 784 (N.D. Cal. 2022) (noting that each of the plaintiff's healthcare providers "allegedly installed the Meta Pixel on their patient portals").

In stark contrast, Plaintiff makes no allegation regarding Baystate using *any* tracking technology inside of the authenticated patient portal. Plaintiff's allegations about her *own* PHI do not allege any specific information she provided to the Baystate website or any corresponding advertisements, nor that she took any actions that would result in transmission of anything more than a view of a public page, which are not contents under the ECPA. Finally, Plaintiff's assertion that whether the information qualifies as "contents" is a factual dispute that cannot be resolved on a motion to dismiss is incorrect. Indeed, whether a substance of a communication qualifies as "contents" under the ECPA has been decided on a motion to dismiss. *See Cook v. Gamestop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023). This Court need look no further than Plaintiff's own deficient allegations to rule that she has failed to allege the interception of "contents" as contemplated by the ECPA. Thus, Plaintiff fails to invoke the crime or tort and her ECPA claim should be dismissed with prejudice.

## III. Plaintiff Fails To State A Claim Under The Massachusetts Right to Privacy Act

Plaintiff fails to address the fundamental requirement of an invasion of privacy claim under the Massachusetts Right to Privacy Act ("MRPA")—an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon,* 468 Mass 379, 382 (2014). Here, Plaintiff fails to allege anything she did on Baystate's public website could support such an invasion. As discussed above, she has not plausibly alleged interception or transmission of her PHI. In fact, Plaintiff's allegations lack any detail at all about the specific information she contends was intercepted or disclosed by Baystate, which alone requires dismissal of her MPRA claim.

Plaintiff's attempt to end-run this fatal pleading deficiency by arguing that because some MPRA claims have survived motions to dismiss hers should as well, falls flat. Plaintiff's argument ignores factual distinctions in the pleadings in those cases. Doc. No. 30 at 16. Any attempt by Plaintiff to analogize the pleadings in other healthcare cases to hers is inapposite. Plaintiff's generalized and hypothetical "examples" of information that "are for illustrative purposes only," are factually distinct from the other healthcare cases on which Plaintiff relies. In *Tenet*, the plaintiff alleged she received targeted advertisements relating to her specific health conditions, including weight loss and diabetes. *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147 –48 (D. Mass. 2024).[2] Plaintiff makes no such allegations here. Her mere speculation that the web browsing information could be used to develop targeted advertisements has nothing to do with her own situation and "do[es] not permit the court to infer more than the mere possibility of misconduct," and therefore, she fails to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

[2] *See also Doe v. Boston Med. Ctr. Corp.,* 2023 WL 7105628, at *2 (Mass. Super. Sep. 14, 2023) (plaintiff alleged her actions within the authenticated patient portal were transmitted to Meta and Google).

Here, Plaintiff alleges that her patient status was transmitted by "logging into the patient portal and scheduling a mammogram and searching for healthcare providers." Doc. No. 30. at 14. Yet, Plaintiff does not name a single provider she actually searched for, nor does she provide *any* details regarding the information she allegedly provided to Baystate. Plaintiff only alleges that it would show that a website user clicked the "schedule appointment" button, not that the appointment was for a mammogram. Her vague allegations are insufficient to establish any invasion into information of a highly personal or intimate nature. Plaintiff's allegations are more analogous to other federal decisions finding routine medical searches and inquiries on a public website do not support invasion of privacy claims. *See B.K. v. Eisenhower Med. Ctr.,* 721 F. Supp. 3d 1056, 1067 (C.D. Cal.); *T.D. v. Piedmont Healthcare, Inc.,* 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) ("There is no intrusion upon privacy when a patient voluntarily provides [PII and PHI] to his or her healthcare provider."). Likewise, here, Plaintiff's allegations at most demonstrate she used Baystate's website for routine medical searches.

## IV. Plaintiff Fails To State A Claim For Breach Of Contract

Plaintiff fails to allege the existence of a valid implied in law contract. Plaintiff counters that "Baystate designed the Website so that Plaintiff and other patients could schedule appointments with specific providers, log into the patient portal, register for supports groups and other care, and obtain information related to their healthcare." Doc. No. 30 at 18. But that is incorrect; the website is available to members of the general public to use for any number of reasons. There is no patient and healthcare provider relationship created through the use of the public website.

Plaintiff's reliance on cases such as *Tenet, Regents of University of California, and Bayhealth* is misplaced as those cases are factually distinct. *Tenet*, 731 F. Supp. 3d at 150 ("Plaintiff alleges that Tenet used trackers to collect Private Information entered by patients accessing their

patient portals on the Website."); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 815-16 (N.D. Cal. 2023) ("UC Regents incorporates a tracking technology called the Meta Pixel, provided by Meta Platforms, Inc. ("Meta"), on both the UCSF website and the MyChart patient portal."); *Doe v. Bayhealth Med. Ctr. Inc.*, 2025 WL 1010403, at * 1 (Del. Super. Apr. 4, 2025) ("[P]laintiffs began receiving targeted ads related to their health conditions and website activity after using the defendant's website."). Here, Plaintiff's Opposition ignores that she has not identified even one specific piece of *her* PHI that Baystate allegedly disclosed to Meta or Google and has solely relied on exemplary screenshots of information that *might* be transmitted. Thus, even under her own theory, and for the reasons addressed in Baystate's Motion, Plaintiff has not adequately pled a claim for breach of contract.

## V. Plaintiff Fails To State A Claim For Breach of Fiduciary Duty

Plaintiff's insufficient allegations likewise doom her breach of fiduciary duty claims, because she does not allege that any special relationship exists here. Plaintiff's allegations are limited to examples of hypothetical use of a hospital's public-facing website, which do not support the inference of a fiduciary duty. Plaintiff attempts to turn the physician-patient relationship into a boundless duty by implying that duty includes any patient that is visiting Baystate's website, even though Baystate has no knowledge of such visitors and no way to determine if they are patients. An extension of the physician fiduciary duty to all public websites visitors would create an untenable obligation on healthcare providers and is not supported by the law.

Plaintiff attempts to clarify that her argument is that because Plaintiff and the Class are patients the fiduciary duty is narrowed from all website visitors to just patients. This argument fundamentally misunderstands the information Baystate receives when a person interacts with the public website. Baystate *does* know that the person is a patient once the appointment is scheduled and at the time Baystate provides portal credentials. But Baystate has no way of knowing in the

moment whether the person clicking on the "make an appointment page" or "portal log in page" is a patient. Additionally, even after the person has logged into the portal or scheduled the appointment there is still no way for Baystate to trace that particular log in or appointment to a click on the website—let alone an actual patient.

Plaintiff's reliance on *Alberts* to establish a further duty of confidentiality is misplaced. *Alberts* focused on the physician's duty "to hold in trust confidential information" in relation to the treatment of a patient. *Alberts v. Devine*, 479 N.E.2d 113, 120 (Mass. 1985). Plaintiff has not alleged that communications with any of her physicians were disclosed. To overcome this deficiency, she once again relies on factually distinguishable cases.[3] In *Tenet*, the plaintiff's complaint alleged specific interactions plaintiff had with Tenet's website, and particular facts regarding the alleged unwanted advertisements she received. *Tenet*, 731 F. Supp. 3d at 147–48. Finally, Plaintiff's argument that breach of fiduciary duty cannot be dismissed at this stage of the litigation is incorrect.[4] Plaintiff fails to establish *any* fiduciary duty, and her claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons and those included in Baystate Health, Inc.'s motion to dismiss and memorandum in support, Baystate respectfully asks the Court to dismiss the Amended Complaint against it with prejudice.

---

[3] *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at * 4 (N.D. Cal. Oct. 25, 2024) (alleging targeted advertisements); *Weld v. CVS Pharmacy, Inc.*, 1999 WL 494114, at *5 (Mass. Super. Ct. June 29, 1999) ("reasonable to infer that a person who imparts private medical and prescription information" to healthcare provider expects that information "will be maintained in confidence").

[4] The cases cited by Plaintiff do not hold that dismissal of a breach of fiduciary duty it not allowed on a motion to dismiss. On the contrary, they held that the factual allegations in those cases did not allow the court to dismiss at that stage. Those cases are factually distinguishable. *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287 (1st Cir. 2004) (contracts case); *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 81 N.E.3d 782 (Mass. App. 2017) (attorney-client privilege); *Szawlowski v. Price*, 240 N.E.3d 799 (Mass. App. 2024) (securities case).

Date: May 23, 2025

Respectfully submitted,

*/s/ Lisa Oliver White*
Lisa Oliver White, BBO# 666841
Shook, Hardy & Bacon L.L.P.
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
Aubrey L. Kramer (*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, the foregoing was served via electronic mail to all parties of record:

Jonathan Shapiro (BBO No. 454220)
Shapiro & Teitelbaum LLP
55 Union Street, 4th Floor
Boston, MA 02108
Tel.: (617) 742-5800
jshapiro@jsmtlegal.com

Sherrie R. Savett
Lane L. Vines
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
ssavett@bm.net
lvines@bm.net

Sophia M. Rios
BERGER MONTAGUE PC
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel.: (619) 489-0300
srios@bm.net

*/s/ Lisa Oliver White*
Lisa Oliver White