**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JANE DOE, Individually and on behalf of all others similar situated,

Plaintiff,

v.

BAYSTATE HEALTH SYSTEM, INC.,

Defendant.

Case No.: 1:25-CV-10337-JEK

**PLAINTIFF'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff submits this notice of supplemental authority to inform the Court of recent decisions that provide additional authority to assist the Court in resolving questions presented in Defendant's motion to dismiss. Plaintiff submits the following authorities:

(i) *Williams v. TMC Health*, No. 23-cv-00434 (D. Ariz. Aug. 19, 2025) (attached as Exhibit A). This decision is a subsequent decision in the *Williams v. TMC Health* case that Baystate cites extensively in its motion to dismiss papers, relating to the use of tracking technologies on a healthcare website.[1] The court in *Williams* permitted the plaintiff there to file a second amended complaint following the decision Baystate cites; the court then denied a subsequent motion to dismiss, finding that the plaintiff's additional allegations were sufficient to affirm an Electronic Communications Privacy Act ("ECPA") claim over the defendants' arguments on the crime-tort exception and the content element. In particular, the court described new allegations in the amended complaint that the hospital "was on notice regarding how data containing health

[1] Dkt. 26, Baystate Brief at 5, 8, 9, 13, 16 (citing *Williams v. TMC Health*, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)).

information may be disclosed or used if tracking technologies were embedded on their website" and decided to deploy the technologies with such knowledge, and therefore it "intercepted data to disclose and use that data in violation of HIPAA." Slip op. at 6-7. Plaintiff already makes substantively the same allegations here.[2] The court also rejected the same argument Baystate makes here that the ECPA's crime-tort exception does not apply because its motivation "was to make money." Slip op. at 7.[3]

(ii) *Jarrett v. Upperline Health, Inc.*, No. 1:23-cv-01261, Dkt. 117 (S.D. Ind. Aug. 8, 2025) (attached as Exhibit B).[4] *Jarrett* is a subsequent decision in the *Doe v. Upperline Health* case that Baystate cites in its motion to dismiss papers regarding HIPAA and the ECPA's crime-tort exception.[5] The court in *Jarrett* permitted the plaintiff there to file a second amended complaint following the decision Baystate cites, and after the amendment, the court denied a subsequent motion to dismiss the ECPA claim. Slip op. at 7-8, 24-26. In particular, the plaintiff added allegations that the hospital's "business arrangement with Facebook reveals its intent to profit commercially from exploiting Private Information, in violation of HIPAA." *Id.* at 26. Here again, Plaintiff already makes substantively the same allegations.[6]

---

[2] *See, e.g.*, Dkt. 12, Amended Complaint at ¶¶ 63-68, 69-71, 72-75, 76-77, 78-80 (detailing how Baystate installed a "pixel" and other tracking technology on its Website that intercepts and discloses confidential patient information); ¶¶ 13-14, 70, 73 (alleging that much of the disclosed information is protected health information under the Health Insurance Portability and Accountability Act of 1996 (HIPAA)); ¶¶ 31, 52 (alleging that the pixel code was installed by Baystate on its Website) and ¶¶ 45, 46, 60, 61, 84, 126 (alleging that the pixel purposefully causes patients' communications to be recorded before being sent to Google and Meta); ¶ 55 (alleging that Baystate had options to protect patient identities but did not do so). *See also* ¶¶ 85-87, 106, 138-139, 141 (alleging that Baystate bugged its website so that Meta and Google can use the information to provide Baystate with enhanced online advertising and analytical services, and increased revenues).

[3] *See* Dkt. 30 at 8-10 (Plaintiff's briefing regarding ECPA's crime-tort exception).

[4] Defendant has moved to amend or alter the Court's decision, and that motion remains pending.

[5] Dkt. 26 at 5.

[6] *See, e.g.*, Dkt. 12, Amended Complaint at ¶¶ 85-87, 106, 138-139, 141 (Baystate installed the pixel so that Meta and Google can use the information to provide Baystate with enhanced online advertising

(iii) *Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364 (S.D.N.Y. June 25, 2025) (attached as Exhibit C). The court in *Pattison* denied a motion to dismiss a claim under the Electronic Communications Privacy Act ("ECPA") relating to the use of tracking technologies on a healthcare website, finding that Plaintiffs' allegations of an "independent, secondary act of disseminating … Plaintiffs' PHI and PII to third parties such as Facebook and Google" supports the ECPA's crime-tort exception. *Id.* at *3[7]

(iv) *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802 (N.D. Cal. July 18, 2025) (attached as Exhibit D). The court in *Riganian* rejected the argument that a profit motive is incompatible with a criminal or tortious motive under the ECPA's crime-tort exception, reasoning that "committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)." *Id.* at *10.

(v) *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) (attached as Exhibit E). In *Smith*, the court held that a defendant's disclosure of personally identifiable information to third parties "in contradiction [to the] commitments it made in its privacy policy … plausibly constitute[s] a further invasion of privacy beyond the act of intercepting the information alone," *id.* at *5, and the court "join[ed] the majority [of] courts that have held a monetary purpose does not insulate a party from liability" under the ECPA, *id.*

(vi) *Allen v. Midwest Express Care, Inc.*, 2025 WL 2240253 (N.D. Ill. Aug. 6, 2025) (attached as Exhibit F). The court in *Allen* upheld an ECPA claim, reasoning that patient status and information on health conditions and treatments are HIPAA-protected information, and

---

and analytical services, and increased revenues); ¶¶ 82-83 (the tracking technology installed by Baystate is not required for any legitimate purpose related to serving patients and is not needed for the Website to operate, for patients to be able to search for information or request appointments, or for Baystate to provide patients with the patient portal).

[7] Dkt. No. 30 at 11-13 (Plaintiff's briefing on same issue).

interceptions of such information support the ECPA's crime-tort exception. *Id.* at *2-3.

Date: October 7, 2025

Respectfully submitted,

*/s/ Lane L. Vines*
Sherrie R. Savett
Lane L. Vines
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
ssavett@bergermontague.com
lvines@bergermontague.com

Sophia M. Rios (pro hac vice)
BERGER MONTAGUE PC
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel.: (619) 489-0300
srios@bergermontague.com

Jonathan Shapiro (BBO No. 454220)
SHAPIRO & TEITELBAUM LLP
55 Union Street, 4th Floor
Boston, MA 02108
Tel.: (617) 742-5800
jshapiro@jsmtlegal.com

*Attorneys for Plaintiff*
*and the proposed Class and Subclass*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: October 7, 2025

*/s/ Lane L. Vines*
Lane L. Vines